## HUNTER COMPANY, INC. *v.* McHUGH, COMMISSIONER OF CONSERVATION, ET AL.

No. 25. Argued October 18, 19, 1943.—Decided November 8, 1943.

*Messrs. Joe T. Cawthorn* and *John M. Madison,* with whom *Mr. C. Huffman Lewis* was on the brief, for appellant.

*Messrs. George A. Wilson* and *T. Hale Boggs,* with whom *Messrs. Arthur O'Quin* and *M. C. Thompson* were on the brief, for the Commissioner of Conservation; and *Mr. Arthur O'Quin,* with whom *Messrs. M. C. Thompson* and *Leon O'Quin* were on the brief, for the Southern Production Co.,—appellees.

*Messrs. J. Howard Marshall* and *Robert E. Hardwicke* filed a brief on behalf of Harold L. Ickes, Petroleum Administrator for War, as *amicus curiae,* supporting the constitutionality of the state Act.

PER CURIAM.

Appellant is the lessee under an oil and gas lease of 190 acres in the Logansport Field in Louisiana. Under permit from the state it has drilled a well on the leased area, which was completed about June 1, 1938, and came into production in December, 1940. To enable it to reach a market for the natural gas produced by this well, appellant has constructed and owns a pipe line which extends from its well to the line of the United Gas Pipe Line Company.

"For the prevention of waste and to avoid the drilling of unnecessary wells," § 8 (b) of Act No. 157 of the Louisiana Acts of 1940, authorizes the State Commissioner of Conservation to establish drilling units for any oil or gas pool, except "where conditions are such that it would be impracticable or unreasonable to use a drilling unit at the present stage of development." The statute defines a drilling unit as "the maximum area which may be efficiently and economically drained by one well."

Section 9 (a) provides that where a drilling unit embraces separately owned tracts the owners may agree to

pool their interests, but provides that in default of such agreement "the Commissioner shall, if found by him to be necessary for the prevention of waste or to avoid the drilling of unnecessary wells, require such owners to do so and to develop their lands as a drilling unit"; such orders "shall be made after notice and hearing, and shall be upon terms and conditions which are just and reasonable, and will afford to the owner of each tract the opportunity to recover or receive his just and equitable share of the oil and gas in the pool without unnecessary expense." The section also provides:

"The portion of the production allocated to the owner of each tract included in a drilling unit formed by a pooling order shall, when produced, be considered as if it had been produced from such tract by a well drilled thereon. In the event such pooling is required, the cost of development and operation of the pooled unit chargeable by the operator to the other interested owner or owners shall be limited to the actual expenditures required for such purpose, not in excess of what are reasonable, including a reasonable charge for supervision. In the event of any dispute relative to such costs, the Commissioner shall determine the proper costs, after due notice to all interested parties and hearing thereon."

Proceeding under Act No. 157, the Commissioner, after notice and hearing, on October 16, 1941, promulgated Order No. 28–B, which designated drilling units of 320 acres for the production of gas from the Logansport Field, allowed the drilling of only one well on each such unit, required the operator of a well drilled before the effective date of the order to designate his drilling area, required him to account to each owner or lessee of land within the unit for the oil and gas produced, and provided for a bi-monthly determination by the Commissioner of the amount of the allowable gas production for each unit.

The order also authorized the Commissioner, upon a showing by any operator that any part of the order as applied to his well "will result in waste, or as to such operator is unreasonable" to make an exception to the directions of the order, provided that such exception "will not result in waste in the field as a whole" or give the operator an "inequitable and unfair advantage over another operator or other operators in the field."

Less than thirty days after the promulgation of this order, no application having been made by an adjacent landowner to require pooling, appellant, without having designated a drilling unit or made application to the Commissioner to make an exception to the order, brought the present suit in the Louisiana civil district court to enjoin the enforcement of Act No. 157 and of order No. 28–B or any similar order. By its bill of complaint appellant asserted that the order was invalid under the state constitution and laws, and violated the Fourteenth Amendment in that it made no provision for the payment to appellant of the reasonable value of its lease and for reimbursing it for the cost of development of the gas, including the cost of drilling its well and laying its pipe line.

The Civil District Court held Act No. 157 and order No. 28–B as applied to appellant to be null and void and enjoined enforcement of the Act and order or any similar order against appellant. The Supreme Court of Louisiana, 202 La. 97, 11 So. 2d 495, set this judgment aside and ordered the complaint dismissed. It held that the order was a valid exercise of state power to prevent future waste of a natural resource of the state and that under the provisions of § 9 (a) of the Act and of the order appellant was entitled to retain its proportionate share of the gas, and to reimburse itself from the proceeds of all the gas for the proportionate share of the cost of drilling and operation changeable to the other landowners in the drilling unit.

The case comes here on appeal under § 237 (a) of the Judicial Code, 28 U. S. C. § 344 (a), appellant assigning as error that the Act and order deprive it of property without due process of law by compelling it to combine its leasehold with the land of others within the drilling unit for the purpose of gas production and to share with them its pipe line and other facilities for the production and marketing of gas, for which no compensation is provided by the Act or order.

After the appeal was docketed in this Court appellee Southern Products Co., which had been allowed to intervene in the state courts, moved to dismiss the appeal as moot by reason of the promulgation by the Commissioner of new orders No. 28–C and No. 28–C–10, which operated to supersede order No. 28–B so far as applicable to appellant's leasehold. Order No. 28–C prescribed enlarged drilling units comprising 640 acres for the Logansport Field. It made other provisions not now material for the regulation of production applicable to the prescribed units. A later order, No. 28–C–10, designated appellant as the operator of a unit and directed that it should be entitled to receive and retain all proceeds derived from the sale of the product of the well after deduction of royalties and costs of production until it should have recovered the costs of drilling and equipping the well and laying and operating the pipe line, and that the balance of the proceeds should be distributed among the landholders within the unit, including appellant, in proportion to their acreage within the unit.

Order No. 28–C was promulgated on February 10, 1942, before the judgments of both the Civil District Court on February 26, 1942 and the Louisiana Supreme Court on November 30, 1942. Although no reason appears why its invalidity could not have been urged before those courts, the order is not in the record and does not appear to have been considered by either state court. Order No. 28–C–10

was promulgated on February 25, 1943, after the decision and judgment of the Louisiana Supreme Court. The only order before the state courts was No. 28–B, to which alone their decisions relate and to which alone appellant's assignments of error in this Court are directed. Its operation has been superseded by orders No. 28–C and No. 28–C–10, under which it appears that both the Commissioner and appellant are now proceeding as controlling the operation of appellant's well, and those orders were not before the state courts or considered by them.

The cause has thus become moot so far as it is concerned with order No. 28–B and this Court, in reviewing on appeal the judgment of the State Supreme Court is not free to, and will not adjudicate the constitutionality of orders No. 28–C and No. 28–C–10 where the state court whose judgment is under review has had no opportunity to pass upon their validity under state law or the Constitution of the United States. See *McGoldrick* v. *Compagnie Generale,* 309 U. S. 430, 433 *et seq.*

A minority of the Court are of opinion that in these circumstances there is no outstanding order which this Court can review and that the appeal should for that reason alone be dismissed.

In the present posture of the record, so far as the appeal seeks to bring before us for review the judgment of the state court sustaining the constitutionality of the statute, the record presents no substantial federal question. We have held that a state has constitutional power to regulate production of oil and gas so as to prevent waste and to secure equitable apportionment among landholders of the migratory gas and oil underlying their land, fairly distributing among them the costs of production and of the apportionment. *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 77; *Bandini Petroleum Co.* v. *Superior Court,* 284 U. S. 8, 22; *Champlin Refining Co.* v. *Corporation Commission,* 286 U. S. 210, 232–4; *Thompson* v.

*Consolidated Gas Corp.*, 300 U. S. 55, 76–7; *Patterson* v. *Stanolind Oil & Gas Co.*, 305 U. S. 376, 379, and cases cited. On this appeal, absent from the record any operative order implementing Act No. 157, we cannot say that the application of the Act can be enjoined as invalid on its face, for we cannot say that no order could be made by the Commissioner which would apportion the production and distribute the costs of production and of the apportionment in a manner which would be consonant both with the requirements of the statute and the Federal Constitution, compare *Patterson* v. *Stanolind Oil & Gas Co., supra*, with *Thompson* v. *Consolidated Gas Corp., supra.* It will be time enough to consider the constitutionality of any particular apportionment and distribution of costs when we have before us the specific provisions of an order directing them which has been subjected to the scrutiny of the state court. See *Bandini Petroleum Co.* v. *Superior Court, supra.*

The appeal will be dismissed for want of a properly presented substantial federal question.

*So ordered.*