**PHILLIPS PETROLEUM COMPANY,**
a corporation, Plaintiff,

v.

**Ray C. JONES, Ray O. Weems and Wilburn Cartwright, Members of the Corporation Commission of Oklahoma; D. M. Lance, J. R. Peterson, Henry C. Hitch, Christine W. Hitch, Joyce H. Gray, John B. Gray, H. C. Hitch, Jr., Lala M. Hitch, George Wagner, and E. J. Phillipe, Defendants.**

Civ. No. 6794.

United States District Court
D. Oklahoma.

Dec. 12, 1955.

Rayburn L. Foster, Harry D. Turner, R. M. Williams, Kenneth Heady, James G. Williams, Jr., Bartlesville, Okl., and Cecil C. Hamilton, Oklahoma City, Okl., for plaintiff.

V. P. Crowe, Ben L. Burdick, William J. Holloway, Jr., Oklahoma City, Okl., and James A. Rinehart, El Reno, Okl., for defendants.

Before MURRAH, Circuit Judge, and CHANDLER and WALLACE, District Judges.

MURRAH, Circuit Judge.

Jurisdictional Statement

In this declaratory action Phillips Petroleum Company seeks a declaration of

invalidity and injunctive relief against the enforcement of an Oklahoma statute, Title 52 O.S.Supp.1955, §§ 248–256, on the grounds that it denies due process and equal protection, impairs contractual obligations, and unduly burdens commerce, in contravention of the Federal and State constitutions. Federal jurisdiction is based upon requisite diversity of citizenship and amount in controversy and an asserted Federal question. And the prayer for injunctive relief against the enforcement of a state statute invokes three-judge jurisdiction under § 2281, Title 28 U.S.C.A.

Defendants, other than the members of the Oklahoma Corporation Commission, moved to dismiss for lack of a justiciable constitutional controversy and failure to exhaust available administrative remedies; and in the alternative, a stay of the proceedings pending state-court adjudication. The essential elements of federal jurisdiction being present, the only question is the appropriateness of its exercise.

### Findings of Fact

The challenged statute governing the use of natural gas for operation of irrigation water wells provides that owners and operators of "any well from which natural gas is produced * * * shall make available, from the production of such well, to the person or persons engaged in agricultural activities upon such premises, if requested to do so, sufficient gas for the operation of pumps necessary for the pumping of such amount of water, produced from wells on such premises, as may be necessary and proper for the irrigation of such portion of said premises as may be devoted to the growth of agricultural products or to pasture or orchard uses". And that "Such gas shall be made available for such use in preference to any other use * * * at * * * a reasonable price, not less than the price at which the gas is sold at the wellhead * * * upon such reasonable terms and conditions as will safeguard the owner or operator of the well in his interests therein and in his off-premises

market for the gas produced therefrom." § 250, Title 52 O.S.Supp.1955.

"The prices, terms and conditions upon which natural gas shall be made available * * * shall be determined by negotiation between the parties." And "In the event of * * * inability to agree as to any or all of such prices, terms and conditions, either party * * * may apply to the Corporation Commission to fix the same." In the determination of prices, terms and conditions the Corporation Commission "shall consider the necessity of the applicant for the gas for the purposes specified" in the Act, "the value of such gas and its components, the efficient operation of the wells of the producer of the gas, the obligations assumed by such producer in the sale or other disposition of such gas, and all other factors relevant to the effectuation of the policy and purposes of this Act with justice to all concerned." § 251, Title 52 O.S.Supp. 1955.

"Pending the determination of any controversy before the Corporation Commission * * * the owner or operator" shall make gas available to the person entitled thereto on "temporary terms and conditions" prescribed by the Corporation Commission, subject to retroactive adjustment under final order of the Commission. § 255, Title 52 O.S.Supp. 1955. Penalties are provided for failure to comply with any duty imposed by the Act, including damages suffered as a result of inability to irrigate because of refusal of the oil operator or producer to perform the duty of furnishing gas. § 256, Title 52 O.S.Supp.1955. Appeals may be taken from the decisions of the Corporation Commission to the Supreme Court of Oklahoma "in the same manner, and subject to the same restrictions and provisions, as are applicable to such appeals from the said Commission in other matters." § 252, Title 52 O.S. Supp.1955.

The complaint alleges in substance that plaintiff, Phillips, is extensively engaged in the production, buying, selling, gathering, processing and refining

of oil and natural gas in Oklahoma; that as a part of its operations it owns gas leases and operates numerous wells producing natural gas in Texas County, Oklahoma; that it has numerous contracts with owners of other gas leases for the purchase of gas from their properties. It also owns and operates extensive systems for the gathering of natural gas produced from such wells, and gasoline extraction plants for the removal of liquid hydrocarbons from such gas; that it has entered into agreements with two natural gas companies, so categorized under the Natural Gas Act, to sell them all of the residue gas from its gas extraction plants, such agreements being subject only to Phillips' obligation to furnish lessors with gas for stoves and inside lights in the principal dwelling house on the leases, none of the agreements providing that gas shall be used for irrigation purposes; that a large percentage of its natural gas moves in interstate commerce for domestic and industrial consumption, and for uses in schools, hospitals, public buildings, and for public utilities; that the defendants, as owners, tenants or occupants of the various tracts on which Phillips owns or holds gas leases or production, have made demand upon it or the well owners with whom it has contracted, for the furnishing of gas under the statute, and have declared publicly that they intend to proceed immediately under the Act with proceedings before the Corporation Commission for the fixing of the prices, terms and conditions on which they claim they are entitled to the gas for irrigation purposes and to take all steps necessary to compel Phillips and other lessors with whom it has contracted to so make the gas available to them.

In urging the necessity for the exercise of Federal equitable jurisdiction Phillips argues that its statutory obligations to make gas available to these defendant landowners is subject only to prices, terms and conditions to be fixed by the Corporation Commission in the event of failure of negotiations, leaving it without remedy, either legal, equitable or administrative, to its immediate and irreparable harm.

## Conclusions of Law

In determining the appropriateness of the exercise of federal equitable jurisdiction, we need only to remind ourselves of the oft-repeated admonition not to decide abstract constitutional questions, especially involving state statutes; and in any event to indulge in every presumption of constitutionality of which the state statute is susceptible. Otherwise stated, Federal jurisdiction, though existent, will not be exercised to strike down a state statute unless it is clearly and palpably unconstitutional upon its face, the enforcement of which will cause immediate and irreparable harm to the complainant, as to which there is no legal or administrative remedy. And see Public Service Comm. of Utah v. Wycoff Co., 344 U.S. 237, 73 S. Ct. 236, 97 L.Ed. 291; Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796; A. F. of L. v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873; Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725; Spector Motor Service v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101; Railroad Comm. of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971.

If, as Phillips suggests, the Act is to be construed to impose an unconditional obligation to make gas available in preference to any other use without regard to prior contractual commitments and subject only to a determination of prices, terms and conditions by the Corporation Commission, serious constitutional questions may be presented, for the liability imposed under § 256, Title 52 O.S.Supp.1955 for all damages suffered as a result of the failure to perform the duty imposed by the statute would undoubtedly subject Phillips to immediate and irreparable harm. See Commonwealth of Pennsylvania v. State of West Virginia, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117. But " 'in whatever language a statute may be framed, its

purpose must be determined by its natural and reasonable effect' ". Henderson v. Mayor of City of New York, 92 U.S. 259, 268, 23 L.Ed. 543, quoted in State of Wisconsin v. J. C. Penney Co., 311 U.S. 435, 443, 61 S.Ct. 246, 249, 85 L. Ed. 267. And we will not presume that the Oklahoma legislature intended to take private property without due process of law, deny the equal protection of the laws, impair contractual obligations, or unduly burden interstate commerce. And if the statute is susceptible of a construction which will avoid any such unconstitutional infringements it is our compelling duty to accord it that construction, at least until the Oklahoma courts have spoken. A. F. of L. v. Watson, supra.

The Act does by its terms impose an obligation upon the natural gas producer to make gas available to those engaged in agricultural activities upon the premises where the wells are located, in preference to any other use, under prices, terms and conditions to be ultimately determined by the Corporation Commission. But the obligation thus imposed is subject to such reasonable prices, terms and conditions as will safeguard the owner or operator of the well in his interest therein and in his off-premises market. And in determining the prices, terms and conditions under which the gas shall be made available, the Corporation Commission is specifically empowered and enjoined to "consider the necessity of the applicant for the gas for the purposes specified" in the Act, "the value of such gas and its components, the efficient operation of the wells of the producer", as well as "the obligations assumed" by him "in the sale or other disposition of such gas, and all other factors relevant to the effectuation of the policy and purposes of this Act with justice to all concerned."

Given its natural and reasonable effect, this language is certainly susceptible of a construction which would permit the Corporation Commission to deny availability of gas in circumstances where necessity is not shown, such as the unirrigability of the lands, the inadequacy of the supply to meet both the statutory requirements and prior contractual commitments resulting in an undue interference with interstate commerce, or other foreseeable factors which might work an unreasonable or unjust incidence of the Act. The contracts with the purchasers of the gas for resale are for all of the residue gas, but there is no suggestion that all of such gas is presently necessary for an adequate supply of the off-premises market, or for that matter, that any of Phillips' contractual obligations will be presently impaired by the obligation to make gas available for the intended purposes of the act. Until that time comes we are not confronted with the situation which prompted annulment of the West Virginia statute in Commonwealth of Pennsylvania v. State of West Virginia, supra, where the act left "nothing to the discretion of those who are to enforce it," 262 U.S. 553, 593, 43 S.Ct. 658, 664, 67 L.Ed. 1117.

 Beyond question, the act's basic objective lies within the pale of local police power authority. Nothing is more universally recognized than the right which inheres in the state to conserve, protect and develop its resources for the peoples' general welfare and prosperity. Hunter Co., Inc., v. McHugh, 320 U.S. 222, 64 S.Ct. 19, 88 L.Ed. 5; Champlin Refining Co. v. Corporation Commission of State of Oklahoma, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062. See also 11 Am.Jur., Section 270, pp. 1014, 1015. To achieve this end, the enjoyment of individual property rights may be curtailed, or in some instances, completely denied. In the act before us, the Oklahoma Legislature has summoned one subterranean natural resource to assist in the capture of another critically needed subsurface mineral for the use and benefit of the state's agricultural economy; and, if the act is given the construction, discussed previously, it does not unconstitutionally deprive of property without due process, impair contractual rights, burden interstate commerce, or deprive

of equal protection of the laws. Inasmuch as the act is not unconstitutional on its face, and since we cannot speculate as to how it will be enforced in each individual case, our inquiry is at an end.

Admittedly, the Oklahoma Corporation Commission is without judicial power to determine this act's constitutionality; nonetheless, it is vested with some discretionary power in its enforcement, and its determinations in that regard are subject to judicial review in a court with power and authority to construe the constitutional validity of the act in the light of such practical applications. If the complainant chooses to challenge the legality or reasonableness of any of the Commission's orders in administering the act, a remedy is readily available.