The SUPERIOR OIL COMPANY, Plaintiff,

v.

SHELL OIL COMPANY, Defendant.

Civ. A. No. 13793.

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 6, 1964.

F. P. Jones, Jr., William W. Bell, **Jr.**, Houston, Tex., Barham, Wright & Barham, Ruston, La., Chaffe, McCall, Phillips, Burke, Toler & Hopkins, Harry McCall, Jr., New Orleans, La., for The Superior Oil Co.

George C. Schoenberger, Jr., J. Carter Perkins, New Orleans, La., for Shell Oil Co.

AINSWORTH, District Judge.

The Superior Oil Company, a Nevada corporation with principal place of business in Houston, Texas, filed two suits in the Louisiana Civil District Court, Parish of Orleans, Louisiana, one against Shell Oil Company, a Delaware corporation with principal place of business in New York, New York, and the other against Humble Oil & Refining Company, a Delaware corporation with principal place of business in Houston, Texas, each for the sum of $86,579.73, claimed to be their pro rata share or cost of drilling Superior's No. 7 Gas Well in the Clovelly Field in Louisiana. Superior had previously drilled and completed the well on September 12, 1958. Thereafter, Humble, said by plaintiff to be acting for itself and Shell, applied to the Louisiana Conservation Commissioner under the provisions of LSA–R.S. 30:1 et seq. for the formation of a compulsory drilling unit for the well. After notice and hearing, the Commissioner created a unit effective April 1, 1962 in which mineral leases jointly owned by Humble and Shell were pooled with those of plaintiff and included in the established unit for the Superior No. 7 Well. A drilling unit, under the statute, means the maximum area which may be efficiently and economically drained by one well. La.R.S. 30:9, subd. B. Under Louisiana law (LSA–

R.S. 30:10, subd. A), the Commissioner's order thereby permitted Humble and Shell to share in the production of the well in the proportion which their acreage bore to the total acreage in the unit. Superior then demanded that Humble and Shell reimburse it pro rata for its cost of drilling the well. Each defendant has resisted Superior's claims on the ground that there is no specific Louisiana statutory provision authorizing same and that Superior must seek reimbursement for its drilling cost from production from the well.

Shell and Humble filed separate petitions for removal of these suits to this court. The Humble suit was remanded to the State Court because there was no diversity of citizenship, as defined by the Federal jurisdictional statute.[1]

The present motion by plaintiff is that we stay all proceedings until there has been an adjudication by a Louisiana appellate court of last resort of the proceeding pending in the State Court of Superior v. Humble. Plaintiff avers that the State Court action referred to involves an interpretation of the Louisiana Conservation Statute (LSA–R.S. 30:1 et seq., formerly Louisiana Act 157 of 1940) as well as an interpretation of the Louisiana Constitution, Article 1, Section 2 (the Due Process Section),[2] and Article 4, Section 15 (no law shall divest vested rights),[3] and an interpretation of LSA–Civil Code Article 1965, (the Louisiana embodiment of the Golden Rule and the prohibition against unjust enrichment).[4]

---

1. Both Superior's and Humble's principal place of business is Houston, Texas. See 28 U.S.C. § 1332(c).

2. Louisiana Constitution, Article 1, Section 2, reads as follows:
   "No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."

3. Louisiana Constitution, Article 4, Section 15, reads as follows:
   "No ex-post facto law, nor any law impairing the obligation of contracts,

shall be passed; nor shall vested rights be divested, unless for purposes of public utility, and for just and adequate compensation previously paid."

4. LSA–Civil Code Article 1965 reads as follows:
   "The *equity* intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these

Plaintiff cites Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), and other decisions [5] to the effect that we should abstain from proceeding further until the Louisiana court of last resort has finally passed on these contentions which are said to be essentially decisive issues and controlling questions of State law. Defendant resists the request for abstention on the ground that the Louisiana Conservation Statute has already been interpreted by the Louisiana Supreme Court and its constitutionality upheld in Hunter Co. v. McHugh, 202 La. 97, 11 So.2d 495 (1942), affirmed by the United States Supreme Court, 320 U.S. 222, 225, 64 S.C. 19, 20, 88 L.Ed. 5, (1943), on facts substantially the same as those presented here. Shell also objects on the ground that abstention in this case would relegate it to await a decision in Superior v. Humble, to which Shell is not a party, and to be bound by a case in which it will have no part and over which it will have no control.[6]

The question presented is: Shall we abstain until final adjudication of the Louisiana courts in the so-called companion suit of Superior v. Humble of the asserted need of an interpretation of the Louisiana Conservation Statute and its unconstitutionality if the statute affords no right to enforce contribution? Our answer is in the negative.

■■■ The abstention doctrine in the Federal courts is a judge-fashioned vehicle for according appropriate deference to the respective competence of the State and Federal Court systems. England v. Louisiana State Board of Medical Examiners, 84 S.Ct. 461 (1964). It originated in 1941 in the Supreme Court's decision

in Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Federal courts will not decide questions of constitutionality on the basis of preliminary guesses regarding local law. State courts are recognized as final expositors of state law. But the doctrine has applicability only where these questions have not heretofore been passed on by local state courts. See Leiter Minerals v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957). Compare the citations found in England v. Louisiana State Board of Medical Examiners, supra, footnote 7.

We believe the Louisiana Conservation Statute has already been interpreted and its constitutionality fully upheld by the Louisiana Supreme Court and the United States Supreme Court in Hunter Co. v. McHugh, supra.

Plaintiff concedes that constitutionality was upheld by the Louisiana Supreme Court in Hunter Co. v. McHugh, supra; however, it contends that the Court merely determined that the omission in the Louisiana Conservation Commissioner's order of any provision for recovery of the operator's costs did not result in unconstitutionality because the operator could retain the proceeds of production. It is contended therefore that no question of the right to enforce contribution by other means was either raised or determined. Plaintiff also concedes that the statute was attacked as invalid because no provision was made for collecting or enforcing the reimbursement of drilling costs, and plaintiff states that the Louisiana Supreme Court concluded that absence of such a provision did not result in unconstitutionality because it felt that possession of the proceeds of production

---

principles to determine what ought to be incidents to a contract, which are required by equity."

**5.** E. g. Leter Minerals v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957); Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Public Utilities Comm. of Ohio v. United Fuel Gas Co., 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed.

396 (1943); Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943).

**6.** We are informed that the Louisiana Civil District Court has maintained an exception of no cause of action subsequently filed by defendant, Humble, and dismissed suit of plaintiff, Superior. No reasons for judgment were assigned.

adequately protected the operator. The language of the Louisiana Supreme Court decision in the Hunter Co. case affirmatively discloses that the Conservation Statute was attacked as being unconstitutional because it constituted an attempt to deprive a landowner or leaseholder of his property without due process of law, or to deny him the equal protection of the law, in violation of the Fourteenth Amendment of the United States Constitution. The Louisiana Supreme Court said in that case:

> "In a supplemental brief filed for the Hunter Company after this case was reargued and resubmitted, complaint is made that, although provision is made in section 9(a) of the statute for the Hunter Company to be reimbursed the proportionate share of the cost of drilling and operating the Hunter well, chargeable to the other landowners or leaseholders in the drilling unit, there is no provision made for collecting or enforcing the reimbursement. The answer to this of course is that the Hunter Company has had and will have possession of all of the proceeds from the production of the well and may retain all of the proceeds until the drilling of the well and putting it on production is entirely paid for."

The Court held in the Hunter Co. case that the statute was "not unconstitutional for any of the reasons advanced by the Hunter Company or maintained by the Judge of the Civil District Court." (11 So.2d 495, at 506)

The United States Supreme Court affirmed, per curiam, the holding of the Louisiana Supreme Court in Hunter Co. and said (320 U.S. 222, 225, 64 S.Ct. 19, 20, 88 L.Ed. 5) :

> "By its bill of complaint appellant asserted that the order was invalid under the state constitution and laws, and violated the Fourteenth Amendment in that it made no provision for the payment to appellant of the reasonable value of its lease and for reimbursing it for the cost of development of the gas, including the cost of drilling its well and laying its. pipe line."

Article 19 of the Bill of Complaint referred to in the above decision was read to this court in oral argument, and in it the Hunter Company averred that the Conservation Statute was unconstitutional because it violated Article 1, Section 2, of the Louisiana Constitution, the so-called due process provision.

■■ So it is clear that the Hunter Company claimed in both the Louisiana and United States Supreme Courts that the Conservation Statute was unconstitutional because it failed to contain a. provision for reimbursement of the proportionate share of the cost of drilling and operating the well, there being no provision made for collecting or enforcing the reimbursement.[7] If there was. some other remedy available to complainant to seek reimbursement or contribution, it would not have been necessary for the court to pass on the constitutional question. Courts do not generally pass.

---

7. Plaintiff cites the action of the Louisiana Legislature in enacting Act 441 of 1960 amending the Conservation Statute (LSA–R.S. 30:5, subd. C), relative to unit operation of a pool where there is a plan for secondary recovery of oil and gas by injection of gas, water or other extraneous substance. This amendment contains a specific proviso that recovery for drilling costs may not be had against an owner who has not consented to unitization, except out of proceeds of production, and plaintiff avers that this supports its contention that the proviso was wholly unnecessary if the general rule is as defendant contends. However, this amendment pertains to the pooling of an entire reservoir and not to production units such as we have here. The amendment points out that it does not in any way modify the authority of the Commissioner to establish drilling units under existing authority. Pool unitization occurs through the voluntary action of at least three-fourths of the owners and royalty holders. This is an entirely different matter than that involved in the instant case. The argument is therefore not compelling.

on constitutional questions unless such adjudication is unavoidable. Rosenberg v. Fleuti, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963).

The motion to stay these proceedings until a final determination of the Louisiana State Court proceeding in Superior v. Humble must be denied because the precise constitutional question presented in this case has already been decided by both the Louisiana Supreme Court and the United States Supreme Court and the constitutionality of the Louisiana Conservation Statute upheld by disposing of the same contention made here—that the statute failed to provide a right of contribution for drilling costs except out of production. The statute has been in operation for nearly twenty-four years and there is no indication that the Louisiana Supreme Court will not follow its previous decision in the Hunter Co. case decided by it in 1942. Abstention would therefore not be proper under these circumstances. See Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943).