**JHJ LIMITED I**

v.

**CHEVRON U.S.A., INC.**

**Civ. A. No. 82–0882–A.**

United States District Court,
M.D. Louisiana.

Sept. 11, 1985.

F. Neelis Roberts, Gordon, Arata, McCollam, Stuart & Duplantis, New Orleans, La., for plaintiff.

John C. Christian, M. Taylor Darden, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN V. PARKER, Chief Judge.

This matter has been tried on the merits. Other aspects of this action have been previously considered by the court. *JHJ Limited I v. Chevron U.S.A., Inc.*, 580 F.Supp. 6 (M.D.La.1983). Trial of the defendant's counter-claim and of the defendant's third party demand has been severed from the main demand. The main demand has been tried upon a written stipulation of facts which is hereby adopted by reference.

This action was instituted in the Twenty-first Judicial District Court for the Parish of Livingston, Louisiana, and was removed by Chevron. Plaintiff is a Texas limited partnership with its managing and general partners being citizens of Texas. Chevron is a California corporation with its principal place of business in California. The matter in controversy exceeds $10,000, exclusive of interest and cost. This court has jurisdiction under 28 U.S.C. § 1441(a).

The stipulated facts may be summarized as follows: Chevron is the lessee in an oil, gas and mineral lease dated November 10, 1973, referred to as the Wunsch lease, covering some 127 acres of land situated in Livingston Parish.

By an order dated October 15, 1981, the Commissioner of Conservation created a unit (the S Unit) which included about 89 acres of Chevron's Wunsch lease. The Commissioner ordered that each tract included in the unit was to share in production from the unit well in proportion to the surface area each tract bears to the entire surface area of the unit. The unit was created for the purpose of insuring orderly mineral development, to prevent waste and to avoid the drilling of unnecessary wells.

Although Chevron received timely notice of the unit application and the hearing thereon, it chose not to participate in or oppose the proceedings.

The Commissioner's order designated Celt Oil Co., Inc. as the unit operator and Celt requested Martin Exploration Company to handle the engineering aspects of the drilling of the unit well.

The Commissioner chose Chevron's Wunsch lease as the surface location for the S Unit well. Again, Chevron had notice of this hearing but chose not to attend or to participate.

Chevron agreed to let Martin use its Wunsch lease surface rights but refused to participate in the cost of the drilling of the well. Subsequently, Martin was designated as unit operator, vice Celt.

JHJ Limited I agreed with Martin to drill the unit well on the Wunsch lease. The well was spudded in on January 15, 1982. Chevron was not a party to this agreement.

Subsequently, Chevron granted a farmout agreement to Martin covering that portion of the Wunsch lease (about 89 acres) which was included in the S Unit, effective March 1, 1982. Under the farmout agreement, Martin would earn an interest in the lease if the well drilled at its sole cost produced minerals in paying quantities.

Between January 4 and June 30, 1982 JHJ provided Martin with oil and gas drilling equipment, supplies and services in connection with the drilling of the well and conducted drilling operations.

In June 1982, when the well had reached a depth of 19,954 feet, Martin suspended operations and no further operations have taken place since then. The well has never been completed as a commercial producer and Martin has never earned any interest in the Wunsch lease.

Martin is unable to pay JHJ the balance owed for services rendered and equipment furnished in connection with the drilling of the well. After granting all credits to which Martin is entitled, the sum of $1,810,594.29 remains due to JHJ for the oil and gas drilling equipment, supplies and services provided by it in the drilling of the Wunsch well.

JHJ has filed three affidavits in the mortgage records of Livingston Parish, Louisiana, claiming a lien and privilege on Chevron's Wunsch lease under the provisions of LSA–R.S. 9:4861 *et seq.*, the Louisiana Oil Well Lien Act. These affidavits meet the procedural requirements of the Act and this suit was timely filed to preserve whatever lien rights, if any, JHJ may have under the statute.

Portions of the Wunsch lease have also been force pooled into two other units by orders of the Louisiana Commissioner of Conservation, the H Unit and the F Unit. Unit wells on both of those units have been successfully completed and Chevron's Wunsch lease has a working interest in all production from each of those wells. Neither well is physically located on the Wunsch lease and Chevron's participation in the production arises solely from the force pooling orders of the Commissioner.

JHJ did not render any services or furnish any machinery or equipment in connection with the drilling of either of the other two unit wells, the F Unit or the H Unit.

Under these stipulated facts, plaintiff claims that the Louisiana Oil Well Lien

**732**

Statute grants it a privilege or lien upon the entire Wunsch lease including Chevron's share of the production from the F Unit and the H Unit wells, neither of which are located upon the Wunsch lease. Chevron argues that it would be at best inequitable, at worst unconstitutional, to extend the effect of the privilege beyond the limits of the S Unit established by the Commissioner of Conservation upon which sits the well drilled by JHJ under its contract with Martin.

The Louisiana statute, LSA–R.S. 9:4861 grants a privilege or lien to "any person who performs any labor or service" and to any person who "furnishes any fuel, drilling rigs, standard rigs, machinery, equipment, material or supplies" in connection with the drilling of a well to search for oil, gas or water, *inter alia*, "... on all oil or gas produced from the well or wells and the proceeds thereof inuring to the working interest therein, and on the oil, gas or water well or wells and *the lease whereon the same are located* ..." (emphasis supplied).

█ Although no Louisiana appellate court has passed upon this precise question, this court has little difficulty in concluding that the statute means exactly what it says—a supplier of well drilling services and equipment is granted a privilege upon "the lease whereon" the well is located. The well drilled by JHJ is located upon the Wunsch lease. Accordingly, JHJ is entitled to a privilege upon the Wunsch lease.

Chevron's argument to the contrary presents a convoluted, serpentine trail through the Louisiana conservation laws concluding with the proposition that, for purposes of the Oil Well Lien Act (but for no other purpose) the action of the Commissioner of Conservation in force pooling three different areas of the Wunsch lease

with other leases had the effect of dividing the lease "for operational purposes" into three separate and independent tracts[1] thus limiting JHJ's privilege to the area of the Wunsch lease included in the S Unit, where the well was drilled. Since the well was not completed as a producer, a privilege upon that portion of the Wunsch lease would be of little benefit to JHJ.

Both sides agree that Louisiana's conservation laws represent a valid exercise of the state's police power to conserve its mineral resources and that orders issued by the Commissioner of Conservation within the area of his delegated authority nullify and supercede private contractural rights which are in conflict with those orders. *Hunter v. McHugh*, 320 U.S. 222, 64 S.Ct. 19, 88 L.Ed. 5 (1943); *Monsanto Chemical Co. v. Southern Natural Gas Co.*, 234 La. 939, 102 So.2d 223 (1958). The unitization or pooling of different tracts into one production unit is based on the very practical notion that the limits of any reservoir of hydrocarbons is determined not by property lines but by subsurface geological facts[2]. Accordingly, one common pool may be located beneath parts or all of numerous tracts of land; conversely, one tract of land might contain hydrocarbons which are found in different pools and the pools may also underlie other tracts of land. It is the duty of the Commissioner of Conservation to develop the natural resources without waste and with due regard to conservation principles. See LSA–R.S. 30:4. Thus, when the Commissioner of Conservation determines the limits of a reservoir, orders the pooling of tracts and designates the location of a unit well, he has determined the location which will drain that common pool to the best advantage of all whose land may lie above it, as well as for the best interest of the state. See LSA–R.S. 30:9.

---

1. Chevron does not mention it but presumably, its argument dictates that the portion of the Wunsch tract which is not included in any unit would constitute a fourth tract.

2. See LSA–R.S. 30:3(6) which defines "pool." Nevertheless, the undersigned recalls instances

in years gone by of listening with amazement while experts solemnly testified to the Commissioner that the limits of an underground formation followed surface features, such as highways or even, on occasion the limits of a particular property line.

Thus the Wunsch lease then has been determined to include parts of three reservoirs or pools. One such pool, the Martin Unit well drilled by JHJ, is a dry hole; the other two are both producers. Since the F Unit well and the H Unit well are both producing from reservoirs, each of which includes a portion of the Wunsch lease, the Commissioner's order includes the requirement that a portion of that production be paid to that lease.

Louisiana's courts have recognized this difference between surface contract rights and subsurface geological facts. Where all or a part of a tract of land is included in a unit order by the Commissioner, but the well drilled into the common pool is not drilled on that tract, the lessor and lessee receive the same revenue as they would have received if the well had been located on their tract and neither could recover any more even if the well had in fact been drilled on their lease. Thus, production derived from the common pool through a well located upon another tract fulfills the lessee's drilling obligation upon the entire tract and extends the primary term of the lease upon the entire area leased. *Hardy v. Union Producing Co.*, 207 La. 137, 20 So.2d 734 (1944); *Hunter Co. v. Shell Oil Co.*, 211 La. 893, 31 So.2d 10 (1947).

The orders of the Commissioner of Conservation regulating the development of the various underground pools in the vicinity of the Wunsch lease have no effect upon and are not in conflict with the private contractural undertakings between the various landowners, lessees and operators. Accordingly, the Commissioner's order has not divided the obligation of the Wunsch lease and Chevron is the first to point out that production from either the F Unit well or the H Unit well maintains Chevron's Wunsch lease in its entirety, despite the admitted fact that neither well is located upon the Wunsch land. Neither the subsurface geology nor the Commissioner's order conflicts with or serves to change the obligations of the Wunsch lease (except the obligation to drill on the land); Chevron still has a single lease covering the entire acreage and LSA–R.S. 9:4861 unambig-uously grants to the supplier of labor, material and equipment, a privilege on "the lease whereon" the well is drilled. This well is located on the Wunsch lease; JHJ has a privilege on the entirety of that lease.

Chevron next argues that such a construction calls the Louisiana Oil Well Lien Act into constitutional question. Asserting that as a "carried interest" in the Wunsch well, who did not initiate the unitization proceedings, did not join in the drilling of the well, did not participate in the selection of the well site and refused to join in paying the cost of the proposed well, Chevron would be liable to the operator for only its proportionate share of the well drilling cost and only out of production; LSA–R.S. 31:177, Chevron then argues that the recognition of a privilege against the entire lease amounts to an unconstitutional taking of its property in violation of the Fourteenth Amendment.

Chevron's argument is wanting. It should first be noted that Chevron incurs no personal liability to JHJ. The privilege is strictly in rem, against the property (lease) only. Second, as an abstract proposition, if the evidence here showed that, through orders of the state, without Chevron's knowledge or consent, a well were drilled upon its lease and that the well produced no benefit to Chevron, it might have some complaint of constitutional dimension. This well, however, was not drilled over Chevron's protest or in the dead of night without its knowledge and consent. The stipulated facts show that Chevron consented to the drilling of the well on its lease; first, it granted Martin surface rights to drill the well on the lease and second, it later actually entered a farmout agreement with Martin under which it specifically consented to Martin's drilling the well.

Chevron took these actions being held to knowledge of the provisions of the Louisiana Oil Well Lien Act. The purpose of that Act is to protect those, like JHJ, who contribute labor, services and equipment to the drilling of wells from the default of those

who engage them. *Standard Supply and Hardware Co. v. Humphrey Bros.*, 209 La. 979, 26 So.2d 8 (1946). The privilege granted by that statute attaches to all property listed in the statute, regardless of ownership, *Blankenship v. Stovall*, 159 So. 477 (La.App. 2d Cir.1935), and requires no contractual relationship between the supplier and the owner of the lease. *Oil Well Supply Co. v. Independent Oil Co.*, 219 La. 936, 54 So.2d 330 (1951).

The parties differ over whether Chevron gained any benefit from the drilling of the well on its lease by Martin. While a finding of benefit to Chevron is not necessary to the decision in this case, because Chevron consented to the drilling of the well, it can be noted that Chevron gained exactly the same benefit that any other mineral lessee gains by the drilling of a dry hole on its lease. One such benefit is fulfillment of the mineral lessee's obligation to develop the property in a reasonable and prudent manner which Louisiana courts have long recognized, see e.g. *Carter v. Arkansas Louisiana Gas Co.*, 213 La. 1028, 36 So.2d 26 (1948), and which is now included in the Mineral Code, LSA–R.S. 31:122. Surely Chevron would take the position with its lessors that the drilling of the Martin well fulfilled Chevron's obligation to develop the lease.

 The Louisiana Oil Well Lien Act is purely economic legislation; it involves no fundamental federal right and affects no suspect class. Thus, under both substantive due process and equal protection analysis, the federal Constitution requires only that the state statute be rationally related to a legitimate state goal. *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). The question of the wisdom or utility of such legislation is for the legislature, not the courts. *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). Here regulation and conservation of Louisiana's minerals is a legitimate state interest, as is the protection of persons who perform labor or furnish services in connection with the drilling of oil, gas and water wells.

Granting a lien on the entire lease where the activity giving rise to the lien occurred is rationally related to these state interests and it is not for this court to say that the legislature might have more logically limited the lien as argued by Chevron. *Wilson P. Abraham Const. Co. v. Texas Industries, Inc.*, 604 F.2d 897 (5th Cir.1979).

Chevron urges that this court should follow the lead of a Louisiana district judge who has apparently accepted Chevron's constitutional argument in litigation pending against it in state court. With due deference to my state court Brother, Chevron's argument of unconstitutionality under the federal Constitution simply does not persuade me.

Chevron's other arguments do not merit discussion.

For the foregoing reasons, there will be judgment recognizing plaintiff's privilege in the amount of $1,810,594.29 together with the other sums authorized by LSA–R.S. 9:4861 against that certain oil, gas and mineral lease dated November 10, 1973, executed by Robert H. Wunsch, *et ux*, in favor of Chevron Oil Company (now Chevron U.S.A., Inc.) recorded on November 27, 1973 in C.O.B. 184 entry number 267, of the records of the Office of the Clerk and Recorder for the Parish of Livingston, Louisiana.

Counsel for plaintiff shall prepare a judgment in accordance with this opinion and submit it to opposing counsel for approval as to form.