512 So.2d 1197 (1987)
KAISER ALUMINUM EXPLORATION COMPANY, Park Lane Enterprises, Inc., Expec Resources, Limited, Acme Brick Company, David Ewell, Leighton Ewell, Rosa McMillian, Betty Craig, Dolese Concrete Company, Louisiana National Bank, as Trustee for the Kirk E. Williams, Jr. Inter Vivos Trust and Bernadette S. Williams Inter Vivos Trust, Tolmak, Inc., Kansas City Southern Railway Company
v.
The Honorable Herbert W. THOMPSON, Commissioner of Conservation and Assistant Secretary, Office of Conservation of the Staff of Louisiana.
CHEVRON U.S.A. INC.
v.
Herbert W. THOMPSON, Commission of Conservation.
Nos. CA/86/1277, CA/86/1278.
Court of Appeal of Louisiana, First Circuit.
August 18, 1987.
*1198 R.L. Redfearn, John C. Herbert, New Orleans, for plaintiff-appellant Kaiser Aluminum Exploration Co., Dolese Concrete Co., LNB as Trustee for the Kirk E. Williams, Inter Vivos Trust and Bernadett S. Williams, Inter Vivos Trust, Rosa E. McMillian, Elizabeth E. Craig, Leighton B. Ewell, David Ewell, Park Lane Enterprises, Inc., Expec Resource, Ltd.
H.H. Hillyer, Jr., Taylor Darden, New Orleans, for Chevron USA, Inc.
David Devillier, Eunice, for defendant-appellee Herbert W. Thompson, Com'n of Conservation.
Lawrence E. Donohoe, Jr., Lafayette, for intervenor-appellee Celeron Oil and Gas Co.
R. Gordon Kean, Jr., Baton Rouge, for intervenor-appellee Rolfe McCollister, Sr. and T.N. Samuel.
Before GROVER L. COVINGTON, C.J., and SAVOIE and LEBLANC, JJ.
SAVOIE, Judge.
Defendant-appellees have filed a motion to dismiss this appeal on grounds of mootness.
By Office of Conservation Order Number 1047, dated effective November 21, 1978, the Commissioner of Conservation defined the 17,600' Tuscaloosa Sand, Reservoir A, and created twenty drilling and production units for the area. By Order 1047-A, dated effective September 18, 1979, the Commissioner created five additional drilling and production units for the 17,600' Tuscaloosa Sand, Reservoir A. A subsequent Order, 1047-A-1, dated effective June 26, 1982, created one additional drilling and production unit for the 17,600' Tuscaloosa Sand, Reservoir A.
By letter dated May 17,1985, Celeron Oil & Gas Company sought changes in the above orders. Specifically, Celeron sought to redefine the 17,600' Tuscaloosa Sand (Reservoir A), into two reservoirs, to dissolve the units previously created, and to create revised drilling and production units. Pursuant to Celeron's application a hearing was held on July 23-25, 1985, and Order 1047-B was issued, dated effective July 23, 1985. Order 1047-B dissolved the twenty units for the 17,600' Tuscaloosa Sand, Reservoir A, which had been created by Order 1047. In addition, it defined the Upper Tuscaloosa Sand, Reservoir A and B, and created six drilling and production units for the Upper Tuscaloosa Sand, Reservoir A and one drilling and production unit for the Upper Tuscaloosa Sand, Reservoir B.
Judicial review of 1047-B was sought in district court (suit number 294,908), by Kaiser Aluminum Exploration Company, Park Lane Enterprises, Inc., Expec Resources, Limited, Acme Brick Company, David Ewell, Leighton Ewell, Rosa McMillian, Betty Craig, Dolese Concrete Company, Louisiana National Bank, as Trustee for the Kirk E. Williams, Jr. Inter Vivos Trust and Bernadette S. Williams Inter Vivos Trust, Tolmak, Inc., and Kansas City Southern Railway Company. Judicial review of Order 1047-B was also sought in district court (suit number 294,909) by Chevron U.S.A. Inc. Judgment was rendered against plaintiffs on June 6, 1986. Thereafter, plaintiffs appealed devolutively to this court.
On appeal plaintiff-appellants raise three main issues. First, some of the plaintiffs contend they did not receive adequate notice of the July 23, 1985, hearing which resulted in the issuance of Order 1047-B. Second, plaintiffs argue Order 1047-B is invalid because the Commissioner failed to state his reasons for redefining the sand and because the redefinition leads to waste in violation of La.R.S. 30:1 et seq. Third, plaintiffs contend the order is invalid because the hearing was held July 23 through July 25, 1985, but the order was dated effective July 23 rather than July 25.
After plaintiffs filed the above appeal, the Commissioner issued Order 1047-B-1, dated effective November 18, 1986. Order 1047-B-1 dissolved the five drilling and production units in the 17,600' Tuscaloosa Sand, Reservoir A, which had been created by Order 1047-A. However, Order 1047-B-1 ordered no change in the drilling and production units in the Upper Tuscaloosa Sand, Reservoirs A and B, which had been created by Order 1047-B. Finally, Order 1047-B-2, dated effective December 11, *1199 1986, dissolved the drilling and production units created for the Upper Tuscaloosa Sand, Reservoirs A and B, which had been created by Order 1047-B, and created a single reservoir-wide unit for the Upper Tuscaloosa Sand, Reservoir A. The sixty day delay for seeking judicial review of 1047-B-1 and 1047-B-2 has expired.
Defendant-appellees have filed this motion to dismiss the appeal, contending plaintiff-appellants' appeal of Order 1047-B should be dismissed because it is moot.
In urging this motion to dismiss defendant-appellees have three main arguments. First, they argue that once a conservation order is superceded by subsequent orders, any appeal as to the validity of the original order becomes moot. Second, they contend plaintiff-appellants have "twice received the relief they requested" on appeal. Third, defendant-appellees argue the appeal is moot because plaintiffs took a devolutive rather than a suspensive appeal.
In the first argument, defendant-appellees argue that once a conservation order that is the subject of an appeal is superceded by subsequent orders, the validity of the order at issue becomes moot. They cite Hunter Co. v. McHugh, 320 U.S. 222, 64 S.Ct. 19, 88 L.Ed. 5 (1943). In Hunter, the plaintiff sought judicial review of Order 28-B, which had been issued by the Commissioner of Conservation. Plaintiff argued Order 28-B was invalid because it was issued pursuant to an unconstitutional legislative act.
Specifically, plaintiff argued order 28-B was invalid because the order made no provision for the payment of the reasonable value of plaintiff's lease and for reimbursing plaintiff for the cost of development of the gas, including the cost of drilling its well and laying its pipeline. After plaintiff had filed its appeal, the Commissioner issued Orders 28-C and 28-C-10. According to Order 28-C-10, plaintiff was entitled to all proceeds from the well (after deduction of royalties and production costs) until it had recovered the costs of drilling the well and laying the pipeline. In addition, the order stated the balance of the proceeds should be distributed among the landowners within the unit in proportion to their acreage within the unit.
After 28-C-10 was issued, the appellee in Hunter filed a motion to dismiss the appeal as moot. Without defining "moot", the U.S. Supreme Court stated:
The cause has thus become moot so far as it is concerned with order No. 28-B and this Court, in reviewing on appeal the judgment of the State Supreme Court is not free to, and will not adjudicate the constitutionality of orders No. 28-C and No. 28-C-10 where the state court whose judgment is under review has had no opportunity to pass upon their validity under state law or the Constitution of the United States. (Citations omitted)
A minority of the Court are of the opinion that in these circumstances there is no outstanding order which this Court can review and that the appeal should for that reason alone be dismissed.
In the present posture of the record, so far as the appeal seeks to bring before us for review the judgment of the state court sustaining the constitutionality of the statute, the record presents no substantial federal question.
320 U.S. 222 at 227, 64 S.Ct. 19 at 21, 88 L.Ed. 5.
Although the Court does refer to the cause as moot, the case was ultimately dismissed for want of a properly presented substantial Federal question.
In any event, recent U.S. Supreme Court cases have more fully defined the concept of mootness. In County of L.A. v. Davis, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979), the Court stated a case is moot when there is no reasonable expectation that the alleged violation will recur and when interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. When both of the above conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law. County of L.A., supra.
*1200 According to Louisiana jurisprudence, a moot case is one which, when rendered, can give no practical relief. Courts will not rule on questions of law which have become moot since their decree will serve no useful purpose and afford no practical relief. Buchanan v. State Civil Service Commission, 372 So.2d 1065 (La. App. 1st Cir.1979).
In the present appeal plaintiff-appellants have raised three main issues: the notice requirement was not met; the Commission erred when it defined the Upper Tuscaloosa Sand; and Commission erred in making the effective date of the order July 23 rather than July 25. If on appeal any one of these three issues is resolved in favor of plaintiff-appellants, it could result in the invalidation of Order 1047-B and the redistribution of royalties. This fulfills the requirement that there be "practical relief" that the court can render. See In the Matter of Delahoussaye, 402 So.2d 308 (La.App. 1st Cir.1981), writ denied, 413 So.2d 494 (La.1982).
In appellees' second main argument for dismissal of the appeal, they contend plaintiff-appellants have "twice received the relief they requested" on appeal. Specifically, defendant-appellees contend that because subsequent hearings were held before the Commissioner (hearings for Orders 1047-B-1 and 1047-B-2) plaintiffs have been accorded relief.
There is no merit to this argument. The hearings held prior to the issuance of Orders 1047-B-1 and 1047-B-2 were not for the purpose of reviewing Order 1047-B. They were to assess the status of the sand definition and unitization at the time they were held. It is clear that Orders 1047-B-1 and 1047-B-2 not only did not address plaintiffs' complaints, but also could not have addressed plaintiffs' complaints.
In the third main argument, defendant-appellees argue the appeal is moot because plaintiffs took a devolutive rather than a suspensive appeal. Defendants contend that if this court addressed plaintiffs' assignments of error, found in plaintiffs' favor, and invalidated Order 1047-B, this would be converting the devolutive appeal into a suspensive appeal. This argument is also without merit. The nature of a devolutive appeal is that it can, if it has merit, result in a reversal of the trial court judgment, despite the fact the trial court judgment has been effective pending the appeal process.
For the foregoing reasons we find the issues herein are not moot, therefore the motion to dismiss the appeal is denied.
MOTION TO DISMISS APPEAL DENIED.