165 So.2d 905 (1964)
The SUPERIOR OIL COMPANY
v.
HUMBLE OIL & REFINING COMPANY.
No. 1474.
Court of Appeal of Louisiana, Fourth Circuit.
June 1, 1964.
Rehearing Denied July 15, 1964.
*906 Chaffe, McCall, Phillips, Burke, Toler & Hopkins, Harry McCall, Jr., Gordon O. Ewin, New Orleans, Barham, Wright & Barham, F. W. Jones, Jr., Ruston, W. W. Bell, Jr., Lake Charles, for plaintiff and appellant.
Peter R. Monrose, Jr., and Donald E. Smiley, New Orleans, for defendant and appellee.
Before McBRIDE, YARRUT and SAMUEL, JJ.
YARRUT, Judge.
Plaintiff prosecutes this appeal from the judgment of the district court dismissing its suit upon maintaining defendant's exception of no cause of action. The issue on appeal is, therefore, one of law predicated upon the allegations of fact in plaintiff's petition which, at this time, must be taken as true.
Plaintiff seeks to recover $86,579.73, interest and costs, as defendant's proportionate part of the cost of drilling and completing The Superior Oil CompanyClovelly Corporation No. 7 Well in the Clovelly Field, Lafourche Parish, Louisiana. The well was drilled by plaintiff originally for its own account, but subsequent thereto, and upon application of defendant, the Commissioner of Conservation (Order No. 213-B, effective April 1, 1962) created a drilling and production unit for the M Sand in the Clovelly Field which, among *907 other things, unitized an area around the Clovelly Corporation No. 7 Well, designated as the well for the unit. The working interest ownership, under Order No. 213-B, for the M Sand was: The Superior Oil Company44.32838%; Humble Oil & Refining Company27.83581%; and Shell Oil Company27.83581%.
Plaintiff alleges the adjusted costs of $311,037.22 for the well were accepted and agreed to without protest by defendant, and that no dispute exists as to the amount of such adjusted well costs.
Plaintiff contends it is entitled to recover the proportionate part of the adjusted well costs from the defendant in cash. To the contrary, defendant contends there is no authority for plaintiff to recover in cash, but only from the proceeds of production from the well accruing to defendant.
The Commissioner of Conservation's authority to allocate well costs is derived from LSA-R.S. 30:10, subd. A(1)(c) which provides:
"A. When two or more separately owned tracts of land are embraced within a drilling unit which has been established by the commissioner as provided in R.S. 30:9B, the owners may validly agree to pool their interest and to develop their lands as a drilling unit.
"(1) Where the owners have not agreed to pool their interests, the commissioner shall require them to do so and to develop their lands as a drilling unit, if he finds it to be necessary to prevent waste or to avoid drilling unnecessary wells.
"(c) In the event pooling is required, the cost of development and operation of the pooled unit chargeable by the operator to the other interested owners shall be limited to the actual reasonable expenditures required for that purpose, including a charge for supervision. In the event of a dispute relative to these costs, the commissioner shall determine the proper costs, after notice to all interested persons and a hearing."
Defendant contends: That, although the interested owners in a forced pooled unit are chargeable by the operator with their share of the reasonable costs of development and operation (Hunter Co., Inc. v. McHugh, 202 La. 97, 11 So.2d 495, aff'd 320 U.S. 222, 64 S.Ct. 19, 88 L.Ed. 5, cf. Huckabay v. The Texas Company, 227 La. 191, 78 So.2d 829), Louisiana courts have never required the non-driller to pay his proportionate part in cash unless he had agreed to do so; that the Revised Statutes, supra, do not impose such an obligation upon one whose interest was included in a unit established by the Commissioner of Conservation; that the courts have held this should not be done; that such party is not required to pay in cash, but that his proportionate part should be taken from his pro-rata of production from the well. In Hunter Co., Inc. v. McHugh, supra, the Court stated:
"In a supplemental brief filed for the Hunter Company after this case was reargued and resubmitted, complaint is made that, although provision is made in section 9(a) of the statute for the Hunter Company to be reimbursed the proportionate share of the cost of drilling and operating the Hunter well, chargeable to the other landowners or leaseholders in the drilling unit, there is no provision made for collecting or enforcing the reimbursement. The answer to this of course is that the Hunter Company has had and will have possession of all of the proceeds from the production of the well and may retain all of the proceeds until the drilling of the well and putting it on production is entirely paid for."
The situation presented by this appeal is that appellant has been divested of sole and exclusive ownership and control of production from its well by operation of *908 the unitization order initiated by appellee. Appellant alone paid the costs of this well. Appellee, while conceding its obligation to reimburse appellant to the extent of its proportionate share in the well as unitized, refuses to make payment in cash, and insists reimbursement must come from proceeds of the well. If appellee is correct, then a valuable property right, viz. the 27.83581% interest in production from the well has been transferred from appellant, who acquired this right by the expenditure of cash, to appellee, who forthwith acquired the benefits of partial ownership of the well, yet declines cash payment therefor in the same manner that appellant paid, and which appellee would have had to pay had it, instead of appellant, drilled the well.
It is obvious that, if appellee's contention is maintained, it will have obtained a substantial advantage over appellant, in that the well satisfies its obligation to its lessor to develop and that it will ultimately receive its share of the proceeds thereof, all without the outlay of one penny. The suggestion that payment will ultimately be made from proceeds of production is not an answer to this situation, as appellant will then be required to finance appellee during the entire time required to obtain reimbursement from proceeds of production. In short, appellant alone will have been required to make the entire investment, whereas the return will accrue only partly to it, and partly to appellee.
Had appellant been designated the unit operator before the well was started, there would be no basis in law or equity for appellee to demand that drilling operations be undertaken without making a contribution thereto as drilling progressed. The requirement of contribution should not be affected by the fact that the well was already in existence. The operator should no more be required to finance the joint enterprise in the one case than in the other. In this respect, when defendant requested unitization of the well already successfully completed by plaintiff, in effect it became a joint adventurer.
Defendant contends the case of Hunter Co., Inc. v. McHugh, supra, establishes the rule that withholding the proceeds from the production of a well is the only method the driller of a unitized well may recover the proportionate cost of drilling from the owners included in the drilling unit.
A casual reading of the case of Hunter Co., Inc. v. McHugh clearly shows no issue was raised as to the operator's right to enforce contribution in cash from his co-owners of their share of development and operating costs. That case involved only an attack on the constitutionality of the Conservation Statute (presently codified as LSA-R.S. 30:1 et seq.) on two principal grounds, viz. (1) delegation of legislative authority without adequate standards and (2) deprivation of property without due process of law (11 So.2d at 498).
Reimbursement of the plaintiff, as operator of the drilling unit, for its co-owners' share of the cost of development was injected into the pleadings as a possible further ground of unconstitutionality, because of failure of the Commissioner's order to provide therefor, viz.:
"That Order No. 28 B is void in that * * * said Order in substance and effect provides * * * for taking of said property * * * without just compensation and without due process of law * * *; that said Order No. 28 B has as its object, purpose and effect the forced unitization of petitioners' oil and gas mining leases with leases owned and held by other parties, without making any provision for the payment to these petitioners of the reasonable value and worth of their said leases and for reimbursing petitioners with their costs of development of said oil and gas mining leases heretofore developed; and without making any provisions for reimbursing petitioners for the laying of pipe lines and securing private markets for the gas; * *" (Article 19 of petition of the Hunter *909 Company, Docket No. 36653, S.Ct. of La.)
The cited case presented no question of the operator's right to recover development costs in cash, hence the determination by the court of such question was purely obiter dicta. From the above-quoted portion of the court's opinion, it is clear no such determination was made or intended. The court quite properly confined itself to the issue before it, viz., the allegedly unconstitutional failure of the Commissioner's order to provide for reimbursement of the operator, and held that no such provision was necessary, because the operator's possession of the proceeds of production, and his consequent ability to withhold them, effectively secured his reimbursement.
Before Hunter Co., Inc. v. McHugh, it was not known whether, in addition to his right to proceed by ordinary suit, an operator could also enforce collection of the shares of other co-owners by withholding the proceeds of production. That decision settled this question but did not, by any fair reading or analysis of the court's language, make this remedy exclusive.
The remedy of effecting collection by means of ordinary suit and judgment had undoubtedly been conferred by the legislative grant of the right to recover these costs. Since a subsequent legislative grant of the remedy of withholding proceeds of production would not, unless expressly stated, operate to take away this original right to proceed by suit and judgment, a subsequent judicial declaration that this remedy existed would likewise not affect the pre-existing remedy, and Hunter Co., Inc. v. McHugh did not do so.
The ordinary remedy for enforcement of legal rights is by suit and judgment. Where the proceeds of production are insufficient to cover the cost of drilling and operating, it is the only remedy available to the operator. Self-reimbursement by withholding proceeds is an adequate remedy where the proceeds are sufficient to cover the cost of drilling and operating and, in these circumstances supplements, but does not destroy, the right of ordinary suit. Such additional remedy should be supplementary only, not destructive of the ordinary remedy.
Hunter Co., Inc. v. McHugh, upholding the constitutionality of the Louisiana Conservation Act, neither was intended nor is dispositive of plaintiff's claim to be reimbursed in praesenti the costs of drilling and operating irrespective of the proceeds of production.
No reported decision of any of the courts of Louisiana can be found in which Hunter Co., Inc. v. McHugh is cited as authority for the proposition that the operator of a drilling unit is restricted to the proceeds of production for recovery of this drilling costs. On the other hand, in Anderson v. The Corporation Commission, 327 P.2d 699, Okl.1958, the Supreme Court of Oklahoma found no conflict or inconsistency in Hunter Co., Inc. v. McHugh and the Oklahoma requirement that co-owners reimburse the operator in cash under pain of being sold out.
The Anderson case was a proceeding to set aside an order of the Oklahoma Corporation Commission requiring the plaintiff, a co-owner, to elect whether to participate in the drilling and operation of the well, or to sell his leasehold rights, but providing that his making bond for payment of costs was an acceptable alternative to actual payment. Commenting on the reciprocal nature of the burdens inherent in unitization, under the applicable Oklahoma statute which provided, inter alia, that:
"Such pooling order of the Commission shall make definite provision for the costs of the development and operation * * *",
the Court said:
"* * * In the case at bar, Anderson had no more justification for complaint of being required to elect whether to pay his portion of the costs or *910 accept the fixed bonus for a lease, than Ellison had to complain of being required to share with him the object of his capturethe production from the well. Both were prerequisites to other rights and privileges granted by the same order under authority of the same statute."
The court sustained the order, citing the United States Court decision in Hunter Co., Inc. v. McHugh as general authority for the constitutional power of a state to regulate production of oil and gas, so as to prevent waste and secure equitable apportionment among landowners "fairly distributing among them the costs of production and of the apportionment" (64 S.Ct. 19, at 21). As authority for the particular order the court referred to an earlier decision, Superior Oil Co. v. Oklahoma Corporation Commission, 206 Okl. 213, 242 P.2d 454, Okl.1952, in which an order of the Commission was upheld which required the non-operating co-owner to pay his share of the costs within ten days, in default of which he was assumed to have elected to accept payment for his leasehold.
In the Superior Oil Co. case the Commission's order required Superior to pay $85,000.00 as its share of the estimated cost of drilling two wells within ten days, or to be presumed to have accepted $500.00 per acre for its lease. No provision was made in the Commission's order for a bond as security for this obligation or for payments to be made as drilling progressed (drilling had not commenced at the time that the order was entered). Commenting on this feature of the Commission's order, the Court said:
"* * * Speaking solely in the abstract, it is common knowledge that an oil operator today is financially able to comply with his contracts, but by the morrow ill fortune has overtaken him and though, ever so willing, he cannot carry out his obligation."
In brief and oral argument defendant urges that a poor and impecunious owner may be subjected to heavy costs he is unable to pay if required to pay cash in the hope of continued production; hence liability for the cost should be recoverable only from the production. Whether this plea is sound or not is not before us at this time, and cannot be considered until the answer of defendant and the trial disclose whether or not defendant is impecunious and why it initiated the unitization by the Commission.
It seems clear to us that the terms of the Louisiana Conservation Act, and the reciprocal nature of the rights and obligations of individual lessees created by virtue of the pooling and unitization order herein, whereby the operations of appellant inure to the benefit of appellee, require appellee to share appellant's drilling expenses, and to contribute thereto in the same manner as they were disbursed by appellant, to-wit, as they accrue.
We can find nothing in Hunter Co., Inc. v. McHugh which makes reimbursement from well proceeds the exclusive method for the operator to recover from his co-owners, in addition to his right to demand payment in cash.
The judgment of the trial court sustaining appellee's exception of no cause of action is annulled and set aside, and the case remanded to the district court to be tried on its merits, so that plaintiff may prove, or defendant disprove, the essential allegations necessary for recovery.
Judgment annulled and set aside and case remanded for trial.

ON APPLICATION FOR REHEARING
PER CURIAM.
To compel an owner and/or his mineral lessee to share the production from their well with the adjoining unitized owners *911 and/or mineral lessees, without requiring immediate payment of the latters' pro rata cost of drilling and production, but limiting recovery solely from the adjoining owners' pro rata of production would, in effect, be unjust enrichment of the latter and the taking of property of the producing owner or lessee for the gain of the adjoining owners or lessees without adequate compensation. This cannot be done even for a public purpose. LSA-Const. art. 1, § 2, art. 4, § 15; U.S.C.A.Const. art. 1, § 10; U.S.C.A.Const. Amend. XIV. In such case the producing owner and/or his lessee would be compelled to assume the entire risk of production, and the financing of the pro rata cost that should be borne by the non-drilling unitized adjoining owners and/or lessees.
It might be pointed out that the Oklahoma cases discussed in our opinion relate to the methods by which Oklahoma deals with a nonconsenting landowner or lessee whose property is included in a forced unit. In such a case, the Oklahoma Commission normally does one of three things: (1) it may require the nonconsenting owner or lessee to put up a bond for his share of the costs; or (2) it may require that a nonconsenting landowner or lessee agree either to lease or to assign an existing lease for a stated bonus and royalty or overriding royalty, as the case may be; or (3) it may allow the nonconsenting party to "ride the well down", subjecting him to liability for drilling costs only in the even the well produces but imposing a penalty by charging him 125 percent, 150 percent or some other percentage in excess of his actual share of drilling costs. For a full discussion of these procedures, see Curlee, "The Problem of the Free-Riding Lessee and Some Suggested Solutions," 9th Ann.Inst. on Mineral Law 21 (1962). Thus, the Oklahoma Corporation Commission cares for the problem of the nonconsenting owner whose property is included in a unit by means not available to the Louisiana Commissioner of Conservation.
The general philosophy of the Louisiana Conservation Act is directed toward preventing adjoining owners or lessees from having to drill unnecessary protective wells on their premises by permitting them to share production proportionately to the area of their acreage drained by the unit well. Were it not for the right to provoke a conservation hearing, drilling by Humble at its own cost might be necessary. In provoking the hearing, Humble avoided the cost of drilling a protective well; hence, it should be responsible directly for its share of the cost of development of Plaintiff's well.
Our decision at this time is limited to the case where the non-drilling owner and/or lessee has demanded the unitization, and no further.
Rehearing denied.