JONES, Justice.
On the first appeal of this case, we reversed and remanded the Mobile Circuit Court’s order granting motions for summary judgment. Ancora Corp. v. Miller Oil Purchasing Co., 361 So.2d 1008 (Ala.1978). Although the general background of this litigation is set forth in our initial opinion, a brief recital of the pertinent facts and the posture of the case may be helpful in understanding our treatment of the issues presented on the instant appeals.
In February of 1975, Miller Oil Purchasing Company initiated this litigation against (1) Ancora-Citronelle Corporation, (2) Ancora Corporation, and (3) numerous other parties who own an overriding royalty interest in certain wells situated in the East Citronelle Unit of the Citronelle Oil Field in Mobile County.
Miller, in its complaint, sought a declaratory judgment of its right to recover from one or more of the defendants monetary damages in the approximate amount of $83,000, representing an alleged overpayment for oil purchased by it from Ancora-Citronelle, as unit manager of the East Citronelle Unit, which had appropriated the oil from wells in which Ancora and the royalty owners owned an interest. Miller alleged different alternative theories of relief which it contended authorized recovery against at least one of the defendants.
In support of its position that Ancora-Ci-tronelle is liable for such overpayment, Miller alleged that § 9-17-83(7), Code 1975, is unconstitutional as being in violation of due process of law. (The essence of this challenge is this: While §§ 9-17-7(b) and 9-17— 83(4) provided for prior notice as a condition to a State Oil and Gas Board order approving unitization of oil and gas properties, no additional notice is required for appropriation pursuant to § 9-17-83(7).)
In the event the statute is found to be constitutional, Miller alleged that Ancora is responsible for the overpayment inasmuch as the funds paid by Miller to Ancora-Citro-nelle for the appropriated oil were applied to an indebtedness allegedly owed by An-cora to Ancora-Citronelle for ultimate credit to the overriding royalty owners; and thus Ancora should reimburse Miller for such payment.
Additionally, Miller alleged that, in the event neither Ancora-Citronelle nor Ancora is responsible, the overriding royalty owners should be liable, because Miller paid their *674 interest when it was not legally obligated to do so.
Finally, Miller admits, and at all times during this litigation has admitted, owing to Ancora the approximate sum of $63,000 for oil purchased, unassociated with and not produced from the East Citronelle Unit; and, in the event the trial court determined Ancora not to be responsible to Miller, Miller offered to pay this sum to Ancora. In the event Ancora is found liable, Miller offers to offset its indebtedness to Ancora.
All the defendants who answered Miller’s complaint denied any liability. Ancora filed a counterclaim seeking to recover compensatory damages from Miller, including the monies Miller admitted it owed to An-cora. In an amended counterclaim, Ancora also sought the imposition of punitive damages. In its amended answer, Ancora joined with Miller in asserting that the appropriation statute was unconstitutional.
Miller, Ancora-Citronelle, and Ancora all filed motions for summary judgment seeking specific relief: Miller seeking to recover from Ancora; Ancora-Citronelle seeking to be dismissed from the litigation; and An-cora. seeking to recover its monies from Miller. No overriding royalty owner, individually or on behalf of all royalty owners, filed for summary judgment. The trial court’s initial ruling was based upon the pleadings, affidavits, and other documents of record at that time.
On June 23, 1977, the trial court entered an order (1) finding that the appropriation statute was constitutional on the basis that no “state action” was involved in the oil appropriation, and (2) granting summary judgment to Ancora-Citronelle and dismissing it from the litigation. In its order, the court reserved for future determination the claims between Miller and Ancora. Upon reconsideration of its June order, the trial court on August 3, 1977, entered its final judgment on Miller’s behalf against Ancora for the sum of $22,677.97, that being the difference between the alleged overpayment and the money owed by Miller to Ancora plus interest. We sustained An-cora’s challenge of the propriety of this summary judgment on the first appeal and the case was remanded.
Additionally, in the original cause before the trial court, Ancora-Citronelle and Miller attempted to set up the res judicata effect of a California judgment in an action between Ancora and Ancora-Citronelle to es-top Ancora from contesting the correctness of the charges arising from the appropriations. The trial court expressly held that both the correctness of the appropriation and the amount appropriated were settled in the California judgment. In reversing the trial court’s granting of summary judgment, we pretermitted further discussion of the claims of res judicata presented in the first appeal.
After reversal and remand, upon a detailed stipulation of facts and a nonjury evidentiary hearing, the trial court in its final decree concluded: (1) the actions of Ancora-Citronelle, as unit operator, in appropriating the oil interests of Ancora were “private action” and hence not subject to the constitutional requirements of due process; (2) Miller was in privity with Ancora-Citronelle as a formal party to the California judgment and hence Miller possessed all the rights and benefits of the doctrine of res judicata; (3) Ancora was indebted to Miller for its overpayment for oil in an amount of $19,720.42, after allowable credits, plus lawful interest; (4) the unitization statute was a constitutional exercise of the police power of the State and the action of the State Oil and Gas Board in 1964, ordering unitization of the East Citronelle Unit, afforded all interested persons full due process of law; and (5) under § 9-17-83(7), the royalty owners became subrogated to the rights of Ancora-Citronelle as unit operator against Ancora to the extent that the royalty owners’ interest were appropriated to pay the delinquent costs and expense of unit operations due from Ancora. When Miller paid the overriding royalty owners the full amount attributable to their interests, Miller obtained those subrogation rights.
Accordingly, the circuit court entered a final judgment against Miller in favor of *675 Ancora-Citronelle and the royalty owners, and in favor of Miller against Ancora. An-cora appeals the judgment against it, while Miller cross-appeals against Ancora-Citro-nelle and the royalty owners. We affirm as to both the appeal and the cross appeal.
I. APPROPRIATION OF OIL WITHOUT NOTICE AND A HEARING.
Initially, Ancora contends that the trial court erred in holding that the actions of Ancora-Citronelle, as unit operator of the East Citronelle Unit, in appropriating seven-eighths of the oil attributable to An-cora’s tract, pursuant to § 9-17-83(7) (the provisions of which were incorporated in the pertinent article of the Unit Operating Agreement by order of the State Oil and Gas Board), did not constitute “state action,” and thus did not violate procedural due process under the United States and Alabama Constitutions. We agree with this holding of the trial court.
Twelve years after the East Citro-nelle Unit was approved by the State Oil and Gas Board, Ancora has attacked the constitutionality of § 9-17-83(7) of the unitization statute.[1] Ancora argues that the procedure of unit operations established by the unitization statute is unconstitutional insofar as § 9-17-83 requires that the unit operators have the authority to appropriate oil for the payment of unit expenses.[2] Ancora contends:
The [unitization] statute speaks in terms of “shall” and not “may” .... In 1964 ... the [State Oil and Gas] Board, an admitted state agency for the State of Alabama, ordered the formation of the East Citronelle'' Unit. In its order ..., the Board in following the requirements of the statute, ordered the unit operations and further ordered that a provision for appropriation of an interest owner’s oil as required by statute be included in the Unit Operating Agreement.
Clearly, the action of the Oil and Gas Board in 1964 was “state action” subject to the due process guarantees of the United States Constitution. The circuit court specifically found:
11. The taking of Ancora’s property [in the constitutional sense] occurred not at the time of the appropriation by Ancora-Citronelle as unit operator but rather in late 1964, when the State Oil and Gas Board approved the East Citronelle Unit Operating Agreement which contained the unit operator’s appropriation provision. As stated in Superior Oil Co. v. Humble Oil & Refining Co., 165 So.2d 905 (La.App.1964), a participant in a pooling agreement is “divested of sole and exclusive ownership and control of production from its well by operation of the unitization order ...” Id. at 907-08.

14. The only state action involved in forming the East Citronelle Unit, the action of the State Oil and Gas Board, was appropriately preceded by notice and full hearing .... Due process requirements were satisfied with respect to State Oil and Gas Board Action by proper notice and a full and fair hearing, as required by Code of Ala. 1975, § 9-17-83.
The unitization statute affords full due process protection at the time of unit-ization. Ancora initially petitioned the Oil and Gas Board for approval of the East Citronelle Unit. A Unit Operating Agreement containing the provisions of § 9-17-83(7) was executed by Ancora. Prior to unitization, the Oil and Gas Board conducted evidentiary hearings to consider whether unit operations would increase ultimate recovery of oil by secondary recovery meth *676 ods, prevent waste, and avoid the drilling of unnecessary wells. § 9-17-81, Code 1975.[3] After conducting a full evidentiary hearing, the Oil and Gas Board determined that unit operations were reasonably necessary to prevent waste, to increase the recovery of oil and to protect the correlative rights of interested parties. § 9-17-82, Code 1975.
We are unable to conclude that the procedures heretofore pronounced failed to provide Ancora (as well as all other interested parties) with minimum due process guarantees; nor does the unitization per se, including the vesting of the unit operator with authority to appropriate a portion of the royalty owner’s oil to pay unit expenses, violate any constitutional guarantees. The circuit court concluded and we agree:
1.The State of Alabama “has constitutional power to regulate production of oil and gas so as to prevent waste and to secure equitable apportionment among landholders of the migratory gas and oil underlying their land, fairly disturbing among them the costs of production and of the apportionment.” Hunter Co. v. McHugh, 320 U.S. 222, 227, 64 S.Ct. 19, 21, 88 L.Ed. 5 (1943).
We further agree with the circuit court’s determination that the actions of Ancora-Citronelle in its appropriation of the oil and gas pursuant to the Board’s order do not constitute “state action”; thus, because the requirements of procedural due process were fully complied with in the first instance (i. e., in the Board’s due process hearings as mandated by the statute), no further notice or hearing is required.
II.MILLER’S PRIVITY WITH ANCORA-CITRONELLE.
Ancora asserts that the trial court erred in concluding, as a matter of law, that Miller was in privity with Ancora-Citro-nelle, and thereby entitled, by the application of the doctrine of res judicata, to the conclusive legal effect of the California settlement agreement, and the judgment entered thereon, between Ancora-Citronelle and Ancora. . We disagree.
The circuit court determined in its conclusions of law:
10. Miller obtained all rights to the oil that Ancora-Citronelle possessed when Miller purchased the oil appropriated by Ancora-Citronelle because Miller is in privity with Ancora-Citronelle under a long established principle of law. Mitchell v. Austin, 266 Ala. 128, 130, 94 So.2d 391, 392 (1957); Skelton v. Tyner, 247 Ala. 511, 513, 25 So.2d 160 (1946); Wilkey v. State, 238 Ala. 121, 127, 189 So. 198 (1939). Due to the privity that Miller possesses in relation to Ancora-Citronelle, Ancora is precluded from raising against Miller issues resolved in the earlier California decree involving Ancora and An-cora-Citronelle; i. e., the propriety of the appropriation and the amount of expenses chargeable to Ancora. It is well settled that the doctrine of res judicata binds not only the parties to the prior judgment, but also their privies. Alabama Farm Bureau Mutual Cas. Ins. Co. v. Moore, 349 So.2d 1113,1115 (Ala.1977); Dominey v. Mathison, 292 Ala. 293, 295, 293 So.2d 472 (1974); Suggs v. Alabama Power Co., 271 Ala. 168,170-71,123 So.2d 4 (1960); IB Moore’s Federal Practice, ¶ 0.411[12] at 1666-68.
Suffice it to say that the trial court’s conclusion of law No. 10, supported by the authorities enunciated, comports with what we believe to be the controlling legal principles governing the doctrine of res judicata under the facts before us. Therefore, we adopt such statement as our own.
III.MILLER’S RIGHT OF SUBROGATION AGAINST ANCORA.
Next, Ancora insists, alternatively, that the trial court committed reversible error in holding that Miller, pursuant to its right of subrogation, as provided under § 9-17-83(7), was entitled to a monetary *677 judgment against Ancora; and this alleged error is predicated on the contention that all the rights and interests of the unit operator to which Miller was subrogated through its payment to the overriding royalty owners have been previously released and forever extinguished by the order and judgment of the Superior Court of the State of California. Stated another way, Ancora argues that the same legal principles that entitle Miller to the benefits of the California judgment should operate with equal effect to foreclose Miller from proceeding against Ancora in this issue.
We reject this argument and agree with the trial court’s holdings:
19. Under Code of A/a.1975, § 9-17-83(7), the overriding royalty owners of the Ancora tracts in the East Citronelle Unit became subrogated to the rights of Ancora-Citronelle as unit operator, against Ancora when the unit operator appropriated seven-eighths of the oil from the Ancora tracts.
20. Miller Oil Purchasing Company obtained the subrogation rights of the overriding royalty owners whose oil was appropriated when Miller voluntarily paid the overriding royalty owners for their appropriated oil. [Emphasis added.]
Miller made all of its payments, which gave it subrogation rights, prior to the California judgment in question; consequently, as to such limited interest, Miller and An-cora-Citronelle were not in a relationship of privity, and Miller’s right to seek reimbursement of its duplicate payments to the overriding royalty owners is not extinguished by the later California judgment in favor of Ancora-Citronelle against Ancora. To be sure, their respective interests with regard to these payments (for which Miller now seeks reimbursement) were antagonistic, although their interests with respect to the subject matter of the California litigation (the right of appropriation and the amount of operation expenses legally chargeable) were identical, and the adjudication of such issues was essential in apportioning the overriding royalty owners’ interests.
The mutuality of interests requisite to the application of res judicata, which is present in one aspect of the subject matter of the California litigation, is missing in one aspect of the subject matter in the Alabama litigation. That is to say, the subject matter of the California litigation was limited to issues in which Miller and Ancora-Citro-nelle had mutual interests, while the Alabama litigation involves issues that cast these same parties on opposite sides. Thus, the trial court did not err in holding that the California judgment, though binding on the parties and their privies, as to the matter there litigated, does not foreclose Miller, as subrogee, from litigating this claim for matters not included in the California litigation. . See, generally, 46 Am.Jur. Judgments §§ 418 and 420 (1969).
IV. MILLER’S “VOLUNTARY” PAYMENTS TO THE OVERRIDING ROYALTY OWNERS.
Lastly, Ancora submits that Miller was not entitled to a monetary judgment against it because payments by Miller to the overriding royalty owners were made with full knowledge and understanding of its act; thus, the voluntariness of its payment precludes any claim for reimbursement against Ancora. We reject this contention.
A close reading of the record reveals that nonpayment by Miller to the overriding royalty owners would have afforded such owners the option of continuing or cancelling their division orders with Miller. Any such cancellation would, no doubt, have presented adverse consequences to a party, such as Miller, in the business of purchasing oil.
A party compelled, in order to preserve his rights, to pay the debt of another, may recover the amount so paid from the person whose duty it was to pay the debt. Beard v. Horton, 86 Ala. 202, 5 So. 207, 208 (1889); Walker v. Smith, 28 Ala. 569 (1856).
The tendency of courts has been, and still is, to hold that payments made under what, for lack of a better term, we may call *678 business compulsion, are involuntary payments; and that, where a person is called upon either to suffer a serious business loss or to make payment, he may recover that payment as having been made involuntarily. Duke v. Force, 120 Wash. 599, 208 P. 67 (1922). 66 Am.Jur.2d Restitution and Implied Contracts §§ 107-108 (1972).
For us to state that failure .by Miller in making its payments to the overriding royalty owners would not have resulted in a serious business loss would be closing our eyes to glaring realities of the commercial worlds. Likewise we cannot in good conscience say that Miller’s payments were simply voluntary. The evidence of record amply supports the trial court’s finding that, in order to insure a continued oil supply, these payments were mandated, in effect, by the circumstances.
We hold that the circuit court on remand of this cause committed no reversible error in its disposition of these proceedings. In light of our disposition of the issues presented in this appeal, the cross-appeal is rendered moot; thus, any discussion at this point of the issues presented on Miller’s cross-appeal would be superfluous.
AFFIRMED AS TO THE APPEAL AND THE CROSS-APPEAL.
TORBERT, C. J., and MADDOX, SHORES and BEATTY, JJ., concur.

. Oil and Gas Board Order 64-32, approving unitization of the East Citronelle Unit, was issued in December of 1964. Miller filed this action challenging the constitutionality of the unitization statute in February of 1975; Ancora joined in the challenge by amended answer in March 1977.

. § 9-17-83 and § 9-17-84, Code 1975, clearly require the inclusion of the provisions of § 9-17-83 in the orders of the Oil and Gas Board and the Unit Operating Agreement. What must be included, however, is a provision that permits but does not require appropriation by the unit operator for the payment of unit expenses. See § 9-17-83(7).

. § 9-17-7(b) specifically provides that no order of the Oil and Gas Board shall be made except after a public hearing upon at least ten days’ notice. Any interested person is entitled to be heard.