GRISBAUM, Judge.
. This appeal concerns an oil company’s right to recover in cash a proportionate share of drilling costs. We reverse.
ISSUE
The sole issue presented is whether the trial court erred in its finding that defendant’s obligation to pay its proportionate share of drilling costs is limited to reimbursement from the proceeds of production, even though the defendant was an “active participant” in the adoption of a unitization plan.
FACTS
Plaintiff, Davis Oil Company (Davis), and defendant, Steamboat Petroleum Corporation (Steamboat), are both oil companies holding separate leases on certain adjacent properties located in Calcasieu Parish. On March 28, 1984, Davis applied to the Commissioner of Conservation for a public hearing to consider the creation of drilling units on the land leased to Davis. With its application, Davis submitted a proposed plan for unitization. This plan did not include the land upon which Steamboat held leases. In response, Steamboat filed a “counter plan” opposing Davis’ application and requesting the Commissioner to adopt its own unitization plan which included land leased by Steamboat. Following a public hearing at which both Davis and Steamboat appeared and urged the Commissioner to adopt their own unitization plan, the Commissioner established three drilling units, each having one unit well in its center; the order was dated effective May 15, 1984. Although the Commissioner’s unitization order did not accept either Davis’ plan nor Steamboat’s plan in toto, it did include in the units land upon which both companies held leases.
Additionally, the Commissioner’s order appointed Davis as the operator of the units created and, as such, authorized Davis to drill the unit wells. The drilling of one of the unit wells, the David well, had already been commenced by Davis and was later completed. Another unit well, the Richard well, was subsequently drilled by Davis. Both wells resulted in non-productive dry holes. In the drilling, testing, and plugging of the David well, Davis incurred costs totaling $3,497,739. This well was drilled on a unit in which Steamboat had a 2.58931 percent share. Davis’ cost for the Richard well was $3,978,086; this well was drilled on unit lands on which Steamboat held a 4.6859 percent share. Davis sent Steamboat invoices totaling $90,567.31 and $186,409.13 for its proportionate costs of the David and Richard wells respectively. Steamboat refused to pay.
Thereafter, Davis instituted this action seeking cash payments from Steamboat for these proportionate shares of the well costs. Steamboat, however, claimed that it is not required to pay the costs in cash; rather, it argued that Davis’ sole remedy is reimbursement from the proceeds of production from the wells.
By agreement of the trial court and the parties, the case was submitted for decision without oral testimony, with the evidence consisting of the parties’ Joint Stipulation of Facts and Joint Stipulation of Facts and Evidence. On March 28, 1990, the trial court rendered judgment in favor of the defendant, Steamboat, dismissing Davis’ claims with prejudice. In its written Reasons for Judgment, the trial court, in part, stated:
Louisiana jurisprudence provides that a non-drilling co-owner may be required to pay his proportionate share of well costs in cash when the non-drilling owner has demanded the unitization. Superior Oil [Co. v. Humble Oil & Refining Co., 165 So.2d 905 (La.App. 4th Cir.1964), writ refused, 246 La. 842, 167 So.2d 669 [668] (La.1964)]_ The facts of the instant case are distinguishable, however, because in Superior Oil, the non-drilling co-owner initiated the unitization proceedings. In the instant case, Davis Oil initiated such proceedings. The Fourth Circuit in Superior Oil specifically held, “Our decision is limited to the case where the ... non-drilling owner and/or lessee has demanded the unitization, and no farther [sic].” Superior Oil, supra, [at 911].
It is the conclusion of this Court that the holding in Superior v. Humble *497 should not be extended to the present circumstances....
ANALYSIS
The Commissioner of Conservation derives his authority for unitization and related powers from Title 30 of the Louisiana Revised Statutes. La.R.S. 30:10(A), as it existed on May 15, 1984, the effective date of the unitization order, in part, provided:
A. When two or more separately owned tracts of land are embraced within a drilling unit which has been established by the commissioner as provided in R.S. 30:9B, the owners may validly agree to pool their interests and to develop their lands as a drilling unit.
(1) Where the owners have not agreed to pool their interests, the commissioner shall require them to do so and to develop their lands as a drilling unit, if he finds it to be necessary to prevent waste or to avoid drilling unnecessary wells.
(c) In the event pooling is required, the cost of development and operation of the pooled unit chargeable by the operator to the other interested owners shall be limited to the actual reasonable expenditures required for that purpose, including a charge for supervision. In the event of a dispute relative to these costs, the commissioner shall determine the proper costs, after notice to all interested persons and a hearing.
The statute, however, while providing that costs are chargeable by the operator to the other interested owners, fails to provide a method of payment.
The dilemma over whether the costs may be recouped in cash or whether the operator is relegated only to reimbursement from the proceeds of production was addressed by our brothers of the Fourth Circuit in Superior Oil Co. v. Humble Oil & Refining Co., 165 So.2d 905 (La.App. 4th Cir. 1964), writ refused, 246 La. 842, 167 So.2d 668 (La.1964). In that case, Superior Oil Company (Superior) drilled a well on its lease, originally for its own account. After the well was completed, Humble Oil & Refining Company (Humble), an adjoining lessee, instituted a unitization hearing which resulted in the creation of a forced drilling unit which included portions of the leases of both Superior and Humble, with Superi- or’s well designated as the unit well. Thereafter, Superior sought to collect in cash Humble’s proportionate share of the well costs. Humble, although not disputing that its share of the costs were due, argued that Superior’s exclusive remedy was withholding the proceeds of production from the unit well. In support of its position, Humble cited the Louisiana Supreme Court’s decision in Hunter Co. v. McHugh, 202 La. 97, 11 So.2d 495 (La.1942). The Fourth Circuit, however, disagreed, stating:
Before Hunter Co., Inc. v. McHugh, it was not known whether, in addition to his right to proceed by ordinary suit, an operator could also enforce collection of the shares of other co-owners by withholding the proceeds of production. That decision settled this question but did not, by any fair reading or analysis of the court’s language, make this remedy exclusive.
The remedy of effecting collection by means of ordinary suit and judgment had undoubtedly been conferred by the legislative grant of the right to recover these costs. Since a subsequent legislative grant of the remedy of withholding proceeds of production would not, unless expressly stated, operate to take away this original right to proceed by suit and judgment, a subsequent judicial declaration that this remedy existed would likewise not affect the preexisting remedy, and Hunter Co., Inc. v. McHugh did not do so.
The ordinary remedy for enforcement of legal rights is by suit and judgment. Where the proceeds of production are insufficient to cover the cost of drilling and operating, it is the only remedy available to the operator. Self-reimbursement by withholding proceeds is an adequate remedy where the proceeds are sufficient to cover the cost of drilling and operating and, in these circumstances supplements, but does not destroy, the *498 right of ordinary suit. Such additional remedy should be supplementary only, not destructive of the ordinary remedy.
Hunter Co., Inc: v. McHugh, upholding the constitutionality of the Louisiana Conservation Act, neither was intended nor is dispositive of plaintiffs claim to be reimbursed in praesenti the costs of drilling and operating irrespective of the proceeds of production.
Superior Oil Co., supra, at 909. Accordingly, that court found that a lessee like Humble provoking a unitization hearing and seeking to participate in a proposed unit can be forced by the operator of the well to pay a proportionate share of drilling costs in cash and that the operator drilling the well was not limited to reimbursement from the proceeds of production.
We likewise find, under the facts presented, that Davis is entitled to be paid in cash by Steamboat for its proportionate share of the drilling costs. Although Steamboat was not the first party to initiate the unitization proceedings, it clearly took an active role in the proceedings by submitting and arguing in support of its counter plan for unitization. In so doing, it urged the Commissioner to include its leased land in the unit, land that was not even included in Davis’ proposal. Steamboat clearly sought to become part of the enterprise represented by the unit; it should, therefore, be required to assume the risks associated with production from that unit. To hold otherwise, we find, would establish an inequitable principle which we cannot embrace.
Other issues have been raised which we find have no merit.
For the reasons assigned, the judgment of the trial court which dismissed the plaintiff’s claims with prejudice is reversed; we award plaintiff damages in the amount of $276,976.44, together with legal interest from date of judicial demand. All costs of this appeal are to be assessed against the appellee.
REVERSED.