488 So.2d 1261 (1986)
Robert L. GIRAUD, Jr. and Mrs. Hilda Anna Giraud Hebert
v.
GILLIS, ELLIS & BAKER, INC., William A. Baker, Jr., Heirs of Carlotta K. Gillis, Donald E. Berry, Robert F. Malinowski, Robert S. Ward, Ronald A. Kaiser, William S. Hulse and James R. Commagere, Jr.
No. CA-4787.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1986.
*1262 Thomas L. Giraud, Giraud, Cusimano & Verderame, New Orleans, for appellants.
David J. Conroy, John F. Landrum, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, for appellees.
Before BARRY, CIACCIO and LOBRANO, JJ.
LOBRANO, Judge.
This is a suit by Robert L. Giraud, Jr. and Hilda Anna Giraud Hebert, (plaintiffs) the surviving heirs of Robert L. Giraud, a minority stockholder of Gillis, Ellis and Baker, Inc., against the corporation, its officers and all other stockholders of Gillis, Ellis & Baker, hereinafter GEB, alleging that certain actions taken during a special stockholders meeting are invalid because notice of said meeting was not properly sent to them. From an adverse judgment upholding the validity of the meeting and the actions taken therein, plaintiffs have perfected this appeal.
The pertinent facts are undisputed. GEB was originally incorporated under the name of Gillis-Hulse Insurance Agency, Inc. on August 31, 1946. The corporate name was subsequently changed to Gillis, Ellis and Baker, Inc. Robert L. Giraud (father of the plaintiffs) was one of the original incorporators of the company. From the time of incorporation until his death in 1975, Mr. Giraud owned 10 of the 354 shares issued and outstanding. At his death, Mr. Giraud was survived by his widow, Hilda Nixon Giraud, and his two children, Robert L. Giraud, Jr. and Hilda Anna Giraud Hebert. By judgment of possession dated November 21, 1977, a copy of which was mailed to GEB, the heirs were placed in possession of the stock. The stock certificate, *1263 however, was never presented to the corporation for change of ownership.
Thereafter, the dividend checks of GEB were mailed to Mrs. Hilda Nixon Giraud as owner and usufructuary of the stock until her death on October 18, 1980.
On October 15, 1981, GEB mailed a notice of a special stockholder's meeting, and an explanatory letter to Robert L. Giraud at 4330 Cleveland Place, Metairie, La. 70003. Plaintiff, Robert L. Giraud, Jr., acknowledged that he received the notice and letter at 4330 Cleveland Place and immediately mailed same to his attorney. The notice stated that the purpose of the meeting was to amend the charter of GEB to delete Article III-A. That article restricted the sale of stock in the corporation by requiring that it first be offered to the other shareholders at the lowest price offered prior to being sold. The explanatory letter advised the shareholders that GEB would reorganize under the provisions of La.R.S. 12:112 H.
At the November 2, 1981 special shareholders meeting all record shareholders, with the exception of plaintiffs, were present and they voted to delete Article III-A of the articles of incorporation. Thereafter, on November 9, 1981, the shareholders of GEB (except the Giraud shareholders) transferred their stock in GEB to a newly formed Louisiana corporation named Gillis, Inc., receiving one share of that corporation for each share of GEB. As the holder of more than 90% of the outstanding stock of GEB, Gillis, Inc. merged GEB into itself pursuant to the provisions of La.R.S. 12:112 H. In the merger agreement, Gillis, Inc. changed its name to Gillis, Ellis & Baker, Inc.
On November 20, 1981, a copy of the certificate of merger was furnished to plaintiffs and the cash value of their stock was fixed at $890.00 per share or $8,980.00 total, all in accordance with La.R.S. 12:112 H. Pursuant to La.R.S. 12:131 C plaintiffs had twenty days within which to object and demand a different value. No such demand was ever made.
NOTICE OF THE SPECIAL MEETING
Plaintiffs argue that the notice of the meeting should have been sent to them rather than their deceased father. Specifically, they contend that since GEB had actual knowledge of their father's death, they had an obligation to properly notify them of the meeting.
La.R.S. 12:79 provides:
"Except as otherwise provided in the articles or by-laws, a corporation, and its directors, officers and agents, may recognize and treat a person registered on its records as the owner of shares, as the owner in fact thereof for all purposes, and as the person exclusively entitled to have and to exercise all rights and privileges incident to the ownership of such shares; and rights under this section shall not be affected by any actual or constructive notice which the corporation, or any of its directors, officers or agents, may have to the contrary."
Despite the fact that GEB had actual knowledge of Robert Giraud's death, the evidence is clear that the corporate stock ledger reflected that he was the record owner of Certificate No. 3 representing the 10 shares. That original certificate was not surrendered by plaintiffs to GEB for change of ownership. GEB could not transfer ownership on its records without surrender of the certificate. La.R.S. 10:8-401. We are of the opinion that GEB had a right to rely on its corporate records in sending the notice.[1] See, Blum v. Latter, 163 So.2d 189 (La.App. 4th Cir.1964) writ refused, 246 La. 717, 167 So.2d 301. Actual or constructive knowledge of anything to the contrary does not affect the rights of GEB to rely on its corporate stock register. La.R.S. 12:79.
*1264 Plaintiffs further argue that even if the notice is valid, the provisions of La.R.S. 12:112 H gives them the option of accepting shares, secured or unsecured obligations, cash or other consideration for their stock. We disagree.
La.R.S. 12:112 H provides, in pertinent part:
"If a business, nonprofit or foreign corporation owns at least 90% of the outstanding shares of each class of one or more business, nonprofit or foreign corporations,... the parent may ... (2) merge into itself one or more such subsidiaries,... If the parent owns less than all of the outstanding shares of any subsidiary merged into itself, the resolution of the board of directors shall also state the terms and conditions of the merger, including the shares, secured or unsecured obligations, cash or other consideration to be delivered to the other shareholders of such subsidiary."
Clearly, under the provisions of the above cited statute, the board of directors is authorized to determine the consideration to be paid minority shareholders. A shareholder aggrieved by corporate action taken pursuant to La.R.S. 12:112 H must follow the procedures of La.R.S. 12:131 C[2] in order to object to the consideration determined by the board. Plaintiffs failed to do this. Furthermore, both substantive and procedural due process are satisfied in that plaintiffs are entitled to receive consideration for their stock after notice and have the opportunity to object if they are not satisfied with the amount of the proposed consideration.
Lastly plaintiffs argue that La.R.S. 12:112 H violates Article 1, Section 4 of the Louisiana Constitution. That article provides, in part:
"... property shall not be taken or damaged by any private entity authorized by law to expropriate except for a public and necessary purpose, and with just compensation paid to the owner ... personal effects, other than contraband, shall never be taken."
By its own terms Article 1, Section 4 applies to "private entities authorized by law to expropriate." Defendant corporation does not fall in that category.
For the above and foregoing reasons, the judgment of the trial court is affirmed.
NOTES
[1] We also note that plaintiffs admit that they were aware of the meeting, had actually received the notice addressed to their deceased father, and forwarded it to their attorney. They chose not to attend the meeting, nor did they object to the validity of the notice until this suit was filed almost three years later.
[2] La.R.S. 12:131 C provides in part:

"In the case of a merger pursuant to La.R.S. 12:112(H), the dissenting shareholder ... need only file with the corporation, within twenty days after a copy of the merger certificate was mailed to him, a demand in writing for the cash value of his shares as of the day before the certificate was filed with the Secretary of State, state in such demand the value demanded and a post office address to which the corporation's reply may be sent, deposit the certificates representing his shares in escrow as hereinabove provided, and deliver to the corporation with his demand the acknowledgement of the escrow bank or trust company as hereinabove prescribed."