UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-30052
_____

ROLAND J. MONGRUE; CLYDE A. GISCLAIR; and SYLVIA GISCLAIR,

Plaintiffs-Appellants,

VERSUS

MONSANTO COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
Eastern District of Louisiana

_____

May 7, 2001

Before JOLLY and DAVIS, Circuit Judges, and RESTANI, Judge.[*]

JANE A. RESTANI, Judge:

The issue before the court is whether remand is necessary for the district court to consider a takings claim against a private entity under the federal Constitution rather than the Louisiana Constitution.   Roland J. Mongrue, Clyde A. Gisclair and Sylvia Gisclair (collectively, "Appellants") originally brought an action in Louisiana state court against Monsanto Company ("Monsanto").  The Appellants had alleged, inter alia, that wastewater injected underground by Monsanto pursuant to a permit issued by the Louisiana Commissioner of Conservation had migrated into their subsurface property, thereby constituting a taking without just compensation.

_____

[*]      Judge of the U.S. Court of International Trade, sitting by designation.

Following removal on diversity grounds, the district court on October 21, 1999, entered an order granting in part Monsanto's motion for summary judgment. In the order, the district court ruled, inter alia, that the Appellants could not establish a claim of unconstitutional taking because Monsanto was not a "private entity authorized by law to expropriate" for a "public and necessary purpose," as required under the Louisiana Constitution. On October 26, 1999, the district court granted the Appellants' motion for leave to dismiss with prejudice to their remaining claim of trespass, thereby rendering the summary judgment order final and appealable.[1] The Appellants subsequently moved for a new trial on the basis that they had claimed takings under both the Louisiana and United States Constitutions. The district court denied this motion. Appellants appeal from both the summary judgment order and the denial of their motion for a new trial. We affirm.

### FACTS

The Appellants and Monsanto own adjacent parcels of real property in Luling, St. Charles Parish, Louisiana. On its property, Monsanto operates a plant facility that manufactures products such as herbicides, acetaminophen and water treatment chemicals. Beginning in 1972, Monsanto disposed of chemical wastewater produced in the manufacture of these products by injecting it through underground wells ("disposal wells") that extend from 2500 to 7000 feet below the surface.[2] Monsanto injects the wastewater through the disposal wells into sand layers isolated by impermeable layers of rock, which prevented vertical migration of the wastewater.

_____

[1] Jurisdiction over this appeal is pursuant to 28 U.S.C. § 1291 (1994).

[2] Louisiana's Mineral Code permits disposal through underground injection. See La. Rev. Stat. Ann. § 30:4.1 (West 1989 & Supp. 2000).

The Office of Conservation of the State of Louisiana, under authority delegated by the Louisiana legislature, had issued permits allowing disposal by such means, subject to monitoring and regulation. See La. Rev. Stat. Ann. § 30:4.1. The permits are granted only after an application process that includes public hearings.

In August of 1998, Appellants filed in state District Court for the Parish of St. Charles, Louisiana, a suit claiming that Monsanto's injection into Disposal Wells #1 and #2 caused a migration of wastewater into the sand strata approximately 2600 feet beneath their properties. No government entity was named in the suit. Appellants claimed that the subsurface migration (1) resulted in Monsanto's unjust enrichment, (2) constituted an unlawful trespass, and (3) constituted a violation of constitutional provisions prohibiting takings for public purpose without just compensation. Rather than seek an injunction,[3] Appellants demanded compensation from Monsanto based on the rental value of their property. Appellants did not challenge the legal authority of the Commissioner in granting the permit, nor the regulatory scheme under which the permit was granted.

On August 25, 1998, Monsanto removed the case to federal district court based on diversity of citizenship pursuant to 28 U.S.C. § 1332.[4] On January 5, 1999, Monsanto filed a motion for judgment on the pleadings, which the court denied on April 9, 1999. In October of 1999, Monsanto filed a motion for summary judgment on all three of Appellants' claims. On

---

[3] Under Louisiana law, plaintiffs seeking an injunction against an operator of a chemical waste injection well must also sue as a necessary party the Commissioner of Conservation in East Baton Rouge Parish, where the Commissioner is located. See Theriot v. Mermentau Res., Inc., 385 So.2d 939 (La. App. 3rd Cir. 1980).

[4] Federal district courts may hear state takings claims in diversity. Vulcan Materials Co. v. City of Tehuacana, 238 F.3d 382, 386 (5th Cir. 2001).

October 21, 1999, the district court granted summary judgment as to the unjust enrichment and the takings causes of action because the court found that Monsanto was not a "private entity authorized by law to expropriate" as required by the Louisiana Constitution, Art. I, sec 4. Finding several genuine issues of material fact, the court denied summary judgment with respect to the trespass claim. On October 26, 1999, the court granted Appellants' motion to dismiss the trespass claim with prejudice, thereby enabling Appellants to appeal the partial summary judgment as the final judgment of the case.

On November 5, 1999, Appellants filed a motion for new trial on the issue of unconstitutional takings. Appellants argued that the court should have analyzed their takings claim under the Fifth Amendment of the United States Constitution. On December 20, 1999, the district court entered an order denying the motion for new trial on the grounds that (1) the motion was untimely,[5] and (2) Appellants were attempting "to relitigate the issue of unconstitutional takings with the new argument that their claim arises under the Fifth Amendment of the United States Constitution." On January 5, 2000, however, the district court vacated the section of its December 20 order that related to timeliness, but reiterated its denial of the Appellants' motion for a new trial on the second ground stated therein. On January 13, 2000, Appellants filed a notice of appeal to challenge the district court's grant of summary judgment and the denial of its motion for a new trial.

**DISCUSSION**

I. Denial of Appellants' Motion for a New Trial

---

[5] Under Federal Rule of Civil Procedure 59, "[a]ny motion for a new trial shall be filed no later than 10 days after entry of the judgment."

"[W]hen the district court's ruling is predicated on its view of a question of law, it is subject to <u>de novo</u> review." <u>Munn v. Algee</u>, 924 F.2d 568, 575 (5th Cir.) (denial of motion for new trial reviewed <u>de novo</u> where partial summary judgment had been decided on availability of damages, a question of law) (citing <u>Dixon v. International Harvester Co.</u>, 754 F.2d 573, 586 (5th Cir.1985)), <u>cert. denied</u>, 502 U.S. 900 (1991).

The order denying a new trial was predicated on the conclusion that Appellants had failed to show a mistake of law in the court's summary judgment analysis or in its application of Louisiana law. The district court found that the Appellants effectively were seeking to relitigate their takings claim under the United States Constitution. <u>See</u> <u>Simon v. United States</u>, 891 F.2d 1154, 1159 (5th Cir. 1990) (Rule 59 motion may not be used to relitigate old matters or raise new arguments). The district court reasoned that because Appellants had "treated their unconstitutional takings claim throughout the litigation as a claim arising under the Louisiana Constitution and not the United States Constitution," summary judgment was properly decided under the former.

The district court's ruling was correctly and properly decided under the Louisiana Constitution based on the Appellants' presentation of the issues. A party has presented an issue in the trial court if that party has raised it in either the pleadings or the pretrial order, or if the parties have tried the issue by consent under Federal Rule of Civil Procedure 15(b).[6] <u>Portis v.</u>

---

[6] Rule 15(b) provides, in relevant part: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." "Amendments to conform to proof are permitted under Rule 15(b) in order to bring the pleadings into line with the issues actually developed during a trial even though the issues were not adequately presented in the pleadings." <u>Falls Indust., Inc. v. Consol. Chem. Indus., Inc.</u>, 258 F.2d 277, 285 (5th Cir. 1958) (citation omitted).

First Nat'l Bank, 34 F.3d 325, 331 (5th Cir. 1994) (citing Myrick v. City of Dallas, 810 F.2d 1382, 1386 (5th Cir.1987)). An issue must be presented so as to put the opposing party and the court on notice that it is being raised. Id. (citing Simon, 891 F.2d at 1158).

Neither the district court nor Monsanto could have been on notice from the Appellants' pleadings that remedies were sought under the federal Constitution. The case had been removed from state court on grounds of diversity rather than federal question jurisdiction. The district court therefore applied the substantive law of the state in which it was sitting, Louisiana. See Erie Ry. Co. v. Tompkins, 304 U.S. 64 (1938). In point six of its petition before the state court, Appellants had referred only to the language of the Louisiana Constitution in informing the court of its basis for their takings claim:

> Monsanto's actions in unilaterally appropriating the property of Mr. Mongrue and the Gisclairs amounts to an unconstitutional taking of their property without payment of just compensation. See Article 1 Section 4 of the Louisiana Constitution, which states that "[p]roperty shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owners . . ." Monsanto should be answerable in damages for just compensation for the property expropriated by Monsanto.

R1-288. In the absence of any reference to the Takings Clause of the Fifth Amendment to the United States Constitution, neither the district court nor Monsanto could have reasonably been on notice that Appellants' petition included a federal claim.[7] Had Appellants intended to bring a

---

[7] Appellants argue that the district court's discussion of federal takings jurisprudence in its order denying Monsanto's Rule 12(c) motion for judgment on the pleadings indicates that the court understood their claim to arise under the United States Constitution. It appears that the district court looked to federal takings law as guidance on the viability of the Appellants' state law claim. After noting the similarity between the Constitutions of the United States and Louisiana, the district court gave an overview of takings law and ruled in its order that: "Under the foregoing cases and Louisiana law, the property rights of the plaintiffs may have been adversely affected." The court did not state that it was ruling on a federal claim, nor did it assert

takings claim under the federal Constitution, they had the chance to amend their petition once it became obvious that Monsanto understood that the takings claim continued to be based on the Louisiana Constitution. In its motion for judgment on the pleadings, Monsanto stated: "The plaintiffs also assert that Monsanto's use of injection wells constitutes a taking by a private citizen in violation of Article I Section 4 of the Louisiana Constitution." R1-250. In their response, Appellants failed to clarify that, as they now allege, their claim was actually brought under both the Constitutions of the United States and of Louisiana. Rather, Appellants asserted that they met the "elements of expropriation" by again citing only the Louisiana Constitution. R1-217. Similarly, Appellants failed to invoke the federal Takings Clause in opposition to Monsanto's motion for summary judgment.

Because the Appellants were attempting to relitigate their takings claim on a new basis, Appellants' motion was properly denied. [8]

---

jurisdiction thereof. Rather, the motion was denied because of a possibility that the claim would be actionable under the general principles cited in the order and because material facts were in dispute. R1-166. See also Hebert Abstract Co. v. Touchstone Props., Ltd., 914 F.2d 74, 76 (5th Cir. 1990) ("A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."). To the extent that the district court may have erred in concluding that its takings analysis "applies to Monsanto because it was acting pursuant to a permit issued by the State," such error was corrected at summary judgment when more facts surrounding the permit came to light. See discussion under Section II, infra.

[8] Appellants also argued in their motion for a new trial that the district court should have analyzed their claim under the Fifth Amendment rather than the Louisiana Constitution because the former preempts the latter. There is no basis for concluding that the district court was obligated to find, sua sponte, that such preemption was required where Appellants failed to raise the issue themselves. In denying the motion for judgment on the pleadings, the district court had made no finding as to whether the takings clause of the Louisiana Constitution was preempted by the Takings Clause of the Fifth Amendment. In fact, the district court specifically noted the similarity between provisions.

II. <u>Summary Judgment Order</u>

This Court reviews grants of summary judgment <u>de novo</u> under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. <u>Atkins v. Hibernia Corp.</u>, 182 F.3d 320, 323 (5th Cir. 1999). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing the record upon which the moving party's motion for summary judgment is based, the court must draw all inferences in favor of the non-moving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). We conclude that the district court's grant of summary judgment on Appellants' state takings claim was proper.

In its order granting partial summary judgment in favor of Monsanto, the district court ruled that as a matter of law Monsanto cannot be liable under Louisiana law "because it is not a private entity authorized by Louisiana law to expropriate private property for a public and necessary purpose." R4-820. The district court reasoned that Monsanto is not one of the exclusive number of private entities upon whom the power of eminent domain has been conferred by the Louisiana legislature, thereby entitling them to expropriate land subject to regulation. The district court specified that entities that are authorized under Louisiana law to expropriate "needed property" include "those corporations constructing and operating roads, railways and canals; utilities providing water, energy and communications, and, companies performing other select functions related to natural gas, coal, and carbon dioxide." <u>Id.</u> (citing La. Rev. Stat. Ann. §§ 19:2, 30:22, 30:554 (West 1979 & Supp. 1999)).

The district court's analysis is correct under Louisiana law.[9]  Under the takings clause of the Louisiana Constitution,  "[p]roperty shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation . . . ."  La. Const. Art. 1, § 4, cl. 2.  The Supreme Court of Louisiana observed that the term "'[e]xpropriation,' or eminent domain as it is called in the common law, is the power of the sovereign to take property for public use without the owner's consent.'"  Tenn. Gas Transmission Co. v. Violet Trapping Co., 176 So.2d 425, 438 (1965) (quoting Nichol's Law of Eminent Domain, sec. 1.11 v. 1, p.2 (3d ed. 1950)).  This power is delegable to administrative officers or other agencies of the sovereign and to public and private corporations.  Id.

For a private entity to qualify under Louisiana law as an agent of the government for the purposes of establishing liability for an unconstitutional taking, the entity must have been expressly delegated the power of eminent domain.  In La. Rev. Stat. Ann. § 19:2, the Louisiana legislature listed specific categories of private entities that may expropriate property under the Louisiana Constitution's takings clause pertaining to private entities authorized by law to expropriate. [10]  Entities expropriating under § 19:2 are subject to the procedural requirements

---

[9] We assume arguendo, as did the district court, that Monsanto's wastewater in fact migrated into the substrata under Appellants' surface property and that Appellants do have ownership rights to the sand layers into which the wastewater was injected. The district court made no finding of such interference, and such interference is disputed insofar as Monsanto filed an expert affidavit disputing the presence of Monsanto's waste under Appellants' surface property.

[10] La. Rev. Stat. Ann. § 19:2 reads in pertinent part:

Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property:

(1) The state or its political corporations or subdivisions created for the purpose of

specified in § 19:2:1.  See Louisiana Power & Light Co. v. Lasseigne, 240 So.2d 707, 709 (La. 1970) ("Expropriation is an extraordinary remedy to which the Legislature has seen fit to apply special procedural rules.").[11]

There are no instances of a private party held amenable to suit under the takings clause of the Louisiana Constitution where there has not been an express delegation by the legislature of the power to expropriate.  Where a private company does not fall into one of the categories listed in § 19:2, courts look to whether the entity has been conferred by statute the power to expropriate property.  For example, in Collins Pipeline Co. v. New Orleans East, Inc., 250 So.2d 29 (La. App.

---

exercising any state governmental powers;
(2) Any domestic or foreign corporation created for the construction of railroads, toll roads, or navigation canals;
(3) Any domestic corporation created for the construction and operation of street railways, urban railways, or inter-urban railways;
(4) Any domestic or foreign corporation created for the construction or operation of waterworks, filtration and treating plants, or sewerage plants . . .
(5) Any domestic or foreign corporation created for the piping and marketing of natural gas . . .
(6) Any domestic or foreign corporation created for the purpose of transmitting intelligence by telegraph or telephone;
(7) Any domestic or foreign corporation created for the purpose of generating, transmitting and distributing electricity and steam for power, lighting, heating, or other such uses. . . .
(8) All persons included in the definition of common carrier pipelines as set forth in R.S. 45:251;
(9) Any domestic or foreign corporation created for piping and marketing of coal or lignite . . .
(10) Any domestic or foreign corporation . . . engaged in the piping or marketing of carbon dioxide . . .
(11) Any domestic or foreign limited liability company engaged in any of the activities otherwise provided for in this Section.


[11] Property expropriated under § 19:2 must be paid for in advance of the taking.  Sabine River Auth. v. Phares, 159 So.2d 144, 146 (La. 1964).

4th Cir. 1971), a private corporation was not at the time included in the exclusive list in Section 19:2. The court held that the corporation was an entity "authorized by law to expropriate" by virtue of an express legislative grant to carrier pipe lines of the power to expropriate private property "under the present state expropriation laws [embodied in La. Rev. Stat. Ann. § 19:1 et seq.] for use in its common carrier pipe line business." Id. at 31. See also La. Rev. Stat. Ann. §§ 19:2(8), 45:254.[12]

In contrast, in Giraud v. Gillis, Ellis & Baker, Inc., 488 So. 2d 1261, 1264 (La. App. 4th Cir. 1986), the court rejected without discussion a takings claim against a private corporation because "[b]y its own terms Article 1, Section 4 applies to 'private entities authorized by law to expropriate.' Defendant corporation does not fall in that category." The company had acted pursuant to a statute allowing parent corporations to merge into a subsidiary whose shareholders

---

[12] Louisiana courts have held that grants of expropriation, even if express, are strictly construed. For example, the court in State Dep't of Highways. v. Jeanerette Lumber & Shingle Co., 350 So.2d 847 (La. 1977), stated:

> In construing constitutions or statutes granting the power of expropriation, even when the power has been expressly granted, the grant, itself, and the extent thereof will be construed strictly against the grantee. The latter will not be allowed to take the lands of another unless such right comes clearly and unmistakably within the limits of the authority granted. Whatever is not plainly given is to be construed as withheld . . . Expropriation "is special and exceptional in character, in derogation of common right, and must be strictly construed."

(citations omitted); accord City of Baton Rouge v. Johnca Props., 764 So.2d 1221, 1223 (La. App. 1st Cir. 2000).

Other examples of statutes authorizing the appropriation of property under the general state expropriation laws are La. Rev. Stat. Ann. § 30:22 (firms having the right to use underground reservoirs for the storage of natural gas) and La. Rev. Stat. Ann. § 30:554 (entities with a certificate of transportation have right of expropriation to "lay, maintain, and operate pipelines, together with telegraph and telephone lines").

were given a cash payment determined by resolution of the board of directors. The statute did not include an express grant of the power to expropriate property. Therefore, takings claims under the Louisiana Constitution may not be brought against private entities absent an express delegation of the power to expropriate, either by virtue of applicability of one of the categories listed in § 19:2 or by some other statute specifically delegating such power.

Here, the record does not reveal any express authorization by law to expropriate property that is relevant to the facts of this case. The permits granted to Monsanto do not reference any right to place wastewater in Appellants' subsurface property. See, e.g., R1-226 to 229. The Office of Conservation apparently was generally aware, however, that the permitted injection of wastewater could result in migration, at least temporarily, into subsurface adjacent property. In a letter dated February 26, 1996, the Office of Conservation stated that "[t]he operator of a subsurface injection well is able to control the depths to which wastes are injected. However, the very idea of subsurface injection of waste assumes that the waste will migrate away from the wellbars by virtue of the pressure created by additional waste being pumped into the zone." R2-418 (emphasis added).[13]

---

[13] The Office of Conservation emphasized the public benefit that outweighed the possible migration into the subsurface property of others by noting that:

> [b]ecause of the highly fragmented ownership which exists in most areas of our State, it would be quite unusual to be able to locate an injection well on a tract where one could be assured that all wastes would remain under the tract on which the injection occurs. At best, requiring the consent of every surface owner whose subsurface might potentially be affected by subsurface injection would increase dramatically the cost of such disposal and at worst might eliminate said disposal altogether since environmental groups may seize upon such a rule as a way to block the disposal.

Id.

Such knowledge is not sufficient to render Monsanto a "state actor" for the purpose of establishing a takings claim. The Louisiana statute allowing for the disposal of chemical wastewater by injection does not confer, expressly or impliedly, the power to expropriate on companies operating under permit by the Office of Conservation.[14] La. Rev. Stat. Ann. § 30:1. Nor has the Louisiana Legislature delegated to the Commissioner of Conservation the power to limit property owner rights with respect to the subsurface disposal of waste by injection, but merely the police power to permit, monitor and regulate this activity.[15] La. Rev. Stat. Ann. §

---

[14] The statutes regulating disposal wells for subsurface injection of waste products are set out in La. Rev. Stat. Ann. §§ 30:1 et seq. The pertinent provisions are as follows:

La. Rev. Stat. Ann. § 30:1 D provides:

> The disposal of any waste product into the subsurface by means of a disposal well and the regulation of all surface and storage waste facilities incidental to oil and gas exploration and production, shall be within the jurisdiction of the department.

La. Rev. Stat. Ann. § 30:4 C provides, in part:

> The commissioner has authority to make after notice and hearings as provided in this Chapter, any reasonable rules, regulations, and orders that are necessary from time to time in the proper administration and enforcement of this Chapter, including rules, regulations, or orders for the following purposes:

> (16) a. To regulate by rules, the drilling, casing, cementing, disposal interval, monitoring, plugging and permitting of disposal wells which are used to inject waste products in the subsurface and to regulate all surface and storage waste facilities incidental to oil and gas exploration and production, in such a manner *as to prevent the escape of such waste product into a fresh ground water aquifer or into oil or gas strata . . . .*

 (emphasis added).

[15] See February 26, 1996 Letter from the Office of Conservation: "In connection with [Louisiana policy regarding disposal of waste by injection], the legislature has delegated its police power to the Commissioner of Conservation to permit, monitor and regulate the subsurface disposal of these wastes . . . ." R2-416.

30:4. It follows, then, that the Commissioner lacked the power to grant to Monsanto the power to expropriate private property.

Pursuant to this regulatory power, the Commissioner of Conservation issues permits primarily based on findings regarding the possibility of vertical migration of the wastewater into the groundwater or into oil or gas strata. There is no evidence that in determining whether to issue the permit, the Commissioner makes findings with respect to property rights or title or authorized the permanent occupation of land. There is no evidence that the Commissioner had the power to issue a unitization order such that the rights of property owners would be redefined or limited.[16]

Because there is no evidence of an express delegation of power to expropriate property with respect to the type of injection activity engaged in by Monsanto, either to the Commissioner of Conservation or directly to the private entities operating under a permit, the district court's

---

Louisiana limits property owner rights only by law. La. Civ. Code Ann. art. 490 (West 1980 & Supp. 2000) (providing that "[u]nless otherwise provided by law, the ownership of a tract of land carries with it the ownership of everything that is directly above or under it") (emphasis added)).

[16] The Commissioner of Conservation has the delegated power to redefine property rights only insofar as it has the power to issue unitization orders for conservation of oil and gas resources to prevent waste. See La. Rev. Stat. Ann. §§ 30:4 et seq. (regulating conservation of oil and gas resources and empowering Commissioner to establish compulsory drilling units in gas field to prevent waste). Unitization is the creation of drilling units that supersedes individual property rights to establish a common interest in the reservoir of natural resources beneath adjacent tracts of land. Nunez v. Wainoco Oil & Gas Co., 488 So.2d 955, 963-64 (La.), cert. denied, 479 U.S. 925 (1986). For example, the Commissioner of Conservation is empowered to establish compulsory units in gas field. La. Rev. Stat. Ann. §§ 30:9, 30:10. See Hunter Co. v. McHugh, 11 So.2d 495, 498-506 (La. 1942) (finding such delegation of legislative power not unconstitutional), appeal dismissed, 320 U.S. 222 (1943). No such unitization redefining property rights is present in this case.

-14-

summary judgment ruling was proper.[17]  Therefore, Appellants may not recover against Monsanto on a claim of unconstitutional takings under the Louisiana Constitution.

## CONCLUSION

Because we find that the district court's grant of summary judgment to Monsanto and denial of Appellants' motion for a new trial were both proper, we AFFIRM.

---

[17] Because we find that as a matter of law Appellants do not establish Monsanto as a state actor, we do not reach the issue of whether Monsanto's disposal of wastewater through injection satisfied the "for a public and necessary purpose" requirement of the Louisiana takings clause.

That the Appellants may not bring a state takings claim against Monsanto in this case is not to say that they may not have sought remedies on other grounds.  The district court found that the Appellants' subsurface property does not belong to a drilling unit designated by the Commissioner and "absent unitization, the Commissioner does not necessarily bar claims of trespass when authorizing the disposal of waste through underground injection wells." RE3-6.  Thus, the district court ruled that upon a proper showing of damages, Appellants may recover under a state unlawful trespass claim against Monsanto regardless of the permit allowing for injection.  Because Appellants agreed to dismissal with prejudice of their trespass claim against Monsanto, we do not reach the issue.