# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 2, 2010

No. 09-10416

Lyle W. Cayce
Clerk

In the Matter of:  VELOCITA WORLDWIDE LOGISTICS INC,

Debtor

-----------------------------

DANIEL SHERMAN,

Appellant

v.

WILLIAM LAMOTHE; RAJAN SOBHANI; CHRIS BRACK; DANIEL
ESTRADA; SCOTT STUDEBAKER; JAMES MICHAEL WALSH;
BRANDON ROBINSON; PATRICK STRYER,

Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:08-CV-1516

Before GARZA, DeMOSS, and CLEMENT, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Daniel Sherman (the "Trustee"), bankruptcy trustee for Velocita Worldwide Logistics, Inc. ("Velocita"), appeals the district court's judgment affirming the bankruptcy court and declining to imply a right of contribution

No. 09-10416

among defendants who agreed to be jointly and individually liable for a payment as part of the settlement agreement for a state tort action.

I

The eight appellees (collectively, the "Employees")[1] worked for Velocita, a shipping company. A competing shipping company, Exel Global Logistics ("Exel"), sued Velocita and the Employees for trade secrets violations. After several months of acrimonious litigation, the parties settled the case. In addition to dozens of pages of injunctions against Velocita and individually tailored injunctions against the Employees, the settlement agreement contained a clause requiring a $1.85 million payment to Exel. In the payment clause, Velocita and the Employees agreed to be "jointly and individually" liable to pay Exel $1.85 million. Velocita paid the entire $1.85 million and later entered bankruptcy when it could not meet the demands of its creditors.

The Trustee brought suit against the Employees, attempting to force them to pay their pro rata share of the $1.85 million to Velocita. Since the settlement agreement made no mention of contribution, the Trustee relied on an implied contractual right to equitable contribution. Both the bankruptcy court and the district court denied relief. The Trustee timely appealed to this court.

II

This appeal asks us to consider whether Texas law would imply a right of contribution for a co-obligor of a settlement agreement that paid more than its proportionate share of the settlement.[2] The Trustee relies primarily on *Faires v. Cockrill*, 31 S.W. 190 (Tex. 1895), and *Merchants' National Bank v. McAnulty*,

---

[1] Although the underlying suit involved ten employees, only eight are party to the instant appeal.

[2] Since the appeal is taken from the district court's summary judgment ruling, our review is *de novo*. *Mongrue v. Monsanto Co.*, 249 F.3d 422, 428 (5th Cir. 2001). We apply the same standards as the district court. *Id.*

2

No. 09-10416

33 S.W. 963 (Tex. 1896), two century-old Texas cases that recognize an implied right to contribution. The Employees argue that the doctrine announced in these cases has only been applied to sureties and guaranties in the 100 years since it was announced, and caution against expanding its application here.

Under Texas law, a claim for contribution is separate from the underlying tort or contract. "The obligation to contribute is not founded upon contract . . . but upon principles of equity and natural justice which requires [sic] that one shall not be made to bear more than his just share of a common burden to the advantage of his co-obligors." *McKelroy v. Hamilton*, 130 S.W.2d 1114, 1116 (Tex. Civ. App. 1939). The reasoning that underlies the right of contribution is that the co-obligors have made an implied promise to bear the burden equally: "[i]n suits for contribution the right of action is on the *implied promise* for reimbursement and not upon the debt." *Miller v. Miles*, 400 S.W.2d 4, 7 (Tex. Civ. App. 1966) (emphasis added).

Texas courts have long allowed actions for contribution in guaranty and surety cases even where the right was not set out in the note or contract. Occasionally, Texas courts have recognized the right to contribution in language broad enough to be construed to cover the situation here. *See, e.g.*, *Employers Cas. Co. v. Transp. Ins. Co.*, 444 S.W.2d 606, 609 (Tex. 1969) ("The general contribution rule is announced in 18 AM. JUR.2D 16, Contribution § 7, in this language: 'The primary requisites of the equitable right to contribution . . . are (1) a situation wherein the parties are in *aequali jure* under some common obligation or burden, and (2) compulsory payment or other discharge, by the party seeking contribution, of more than his fair share of the common obligation or burden.'"). Other cases have defined the right to implied contribution more narrowly. "Under Texas law, there is a very limited right of contribution on a breach of contract claim; that is, a contribution right exists among co-guarantors on a note, or in any situation where there is an implied promise of co-obligors to

3

pay their proportionate shares of a common obligation." *Interstate Contracting Corp. v. City of Dallas*, No. 3:98-CV-2913-M, 2000 WL 1281198, at \*4 (N.D. Tex. Sept. 8, 2000) (unpublished), *rev'd on other grounds*, 407 F.3d 708 (5th Cir. 2005).

Notwithstanding the broad language quoted above, Texas courts, to the best of our knowledge, have not found occasion to extend the contribution right implied in guaranty and surety agreements to other types of contracts. Because the doctrine has been limited to guaranty and surety agreements, it stands to reason that features of these contracts make them more conducive to equitable contribution than other types of contracts. An examination of the underlying reasons why Texas courts have allowed contribution only in these limited types of agreements bears out this contention.

First, in sureties and guaranties, the subject matter of the contract is (generally) money that has been lent to one party on the binding assurance of another or others. Should the lendee fail to repay, the only contested item is completely fungible and thus easily divisible, making pro rata liability simple to calculate and knowable in advance. Second, contribution accords with the settled expectations of the guarantors: if there are three guarantors, in the absence of contractual provisions to the contrary, each can expect to bear no more than one-third of the amount at issue. The implied promise underlying the right to contribution is implied because it is expected and desired *ex ante*. Disallowing contribution would force each guarantor in a multi-party guaranty to gamble with his potential liability. This would stifle the lending that guaranties encourage. Third, contribution in the world of guaranties and sureties is both fair and efficient. It speeds the collection process for lenders and ensures that each of the guarantors or sureties is treated equally by default. In sum, surety and guaranty contracts feature both an easily divisible subject

matter and an unmistakable underlying intent as to how the parties will bear the risk of default by the lendee.

Assuming *arguendo* that Texas courts would imply a right to contribution in settlement agreements as a general matter, we decline to do so here. The factors that justify the contribution right implied in sureties and guaranties are absent here. First, the subject matter of the settlement agreement involved more than money. Although a $1.85 million payment constituted one part of the agreement, the remainder comprised individually tailored injunctions against the Employees and Velocita.[3] Texas courts have recognized that the general rule of an equally divided pro rata contribution is altered when, for example, co-obligors shared unequally in the consideration received out of the note, in which case "contribution may be prorated according to the benefits each received." *Dittberner v. Bell*, 558 S.W.2d 527, 534 (Tex. Civ. App. 1977). In this case, the benefits that the individual Employees received from being released from the suit were presumably not equal. Some Employees must have been less involved in the actions that Exel alleged were trade secret violations. The individually tailored injunctions support this contention: LaMothe, for example, faced an injunction that was notably more strict than that faced by the other Employees. Thus, contrary to the Trustee's arguments, implying a right to contribution would necessarily force the district court to open up the underlying settlement to determine an equitable division among the Employees.

---

[3] The presence of disparate injunctions, in addition to money, distinguishes the instant case from *Greenspan v. Green*, 255 S.W.2d 917 (Tex. Civ. App. 1953). In *Greenspan*, a bankruptcy trustee was allowed to assert a contribution claim against a co-judgment debtor, even though the "joint judgment [was] without a provision for contribution between the co-debtors." *Id*. at 918. Although the case supports the Trustee's position, it is not entirely analogous because the underlying judgment only involved money, thus making it more similar to a surety or guaranty than the instant settlement agreement. Furthermore, at oral argument, the Trustee specifically disavowed any theory of recovery based on co-debtor status.

No. 09-10416

The instant facts are in stark contrast to the situation in *Dittberner*, where the court was able to find the amount of consideration received by each party to the promissory note as a percentage of the whole. *Id*. at 534. In cases where the percentage that each party should bear is obvious from the face of the contract or where the parties entered into the arrangement with their potential share of liability allocated by existing law, it is relatively easy for the courts to calculate each party's contribution. The implied promise on which the right of contribution rests is more plausible in such cases. The difficulty of equitably apportioning contribution here weighs against implying the remedy.

Additionally, nothing indicates that contribution would accord with the expectations of the Employees and Velocita. Allowing contribution would imply an eleven-way promise that the Employees and Velocita would almost surely not have made in the circumstances of this case.[4] The Trustee has not pointed to anything in the record indicating that, *ex ante*, the Employees contemplated an arrangement at all analogous to a guaranty.

### III

In conclusion, we do not find the obligations in the instant settlement agreement to be analogous to the obligations in surety and guaranty agreements, the contractual arrangements in which Texas courts have allowed contribution claims against co-obligors. Here, where each party appears to have received a different benefit from the settlement agreement, the shared burden is neither completely fungible nor easily divisible. Accordingly, we affirm the district court's judgment that, on these facts, a right to contribution should not be implied.

---

[4] Each of the Employees had a different interest in Velocita; LaMothe, for example, appears to have been a principal in the company. We find it highly unlikely that the more "minor players" signed the agreement with the understanding that they could each be liable for approximately $200,000 of the payment to Exel.

6

No. 09-10416

AFFIRMED.

HAROLD R. DeMOSS, JR., Circuit Judge, concurs in the judgment only.